**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PRISCILLA VASQUEZ,
        *Plaintiff-Appellant,*

v.

MICHAEL J. ASTRUE, Commissioner
of Social Security,
        *Defendant-Appellee.*

No. 06-16817

D.C. No.
CV-05-03857 JW

ORDER AND
AMENDED
DISSENT

Appeal from the United States District Court
for the Northern District of California
James Ware, District Judge, Presiding

Argued and Submitted
May 15, 2008—San Francisco, California

Filed November 5, 2008
Amended July 8, 2009

Before: Diarmuid F. O'Scannlain and
Michael Daly Hawkins, Circuit Judges, and
James V. Selna,* District Judge.

Opinion by Judge Selna;
Concurrence by Judge Hawkins;
Dissent by Judge O'Scannlain

---

*The Honorable James V. Selna, United States District Judge for the
Central District of California, sitting by designation.

8397

## COUNSEL

James Hunt Miller, Oakland, California, for the plaintiff-appellant.

John C. Cusker, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, San Francisco, California, for the defendant-appellee.

## ORDER

The opinion issued on November 5, 2008 is amended by inserting the following after the first paragraph of Judge O'Scannlain's dissent on page 15123:

Subsequent to our decision in this case, the government petitioned for rehearing en banc, arguing that the crediting-as-true rule is invalid because it is contrary to both statute and Supreme Court precedent. Vasquez did not respond to the government's arguments in detail, and so I do not opine whether the government is right. However, the case appears strong. The government asserts that under the Social Security Act, the Commissioner — not a federal court — is the factfinder. *See* 42 U.S.C. § 405(g) (findings of Commissioner are conclusive so long as substantial evidence supports them). While the statute prohibits a claimant's testimony concerning pain or other symptoms alone from establishing a disability, this appears to be exactly what the crediting-as-true rule would require. *Cf.* 42 U.S.C. § 523(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; *there must be medical signs and findings* . . . which show the existence of a medical impairment . . . which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence . . . would lead to a conclusion that the individual is under a disability." (emphasis added)). The government notes that the general rule (subject to "rare" exceptions) "is to remand to the agency for additional investigation or explanation." *INS v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam). We do not credit-as-true in only "rare" cases; according to the government, we took some factfinding responsibility

away from the Commissioner in at least twenty-two cases during 2007 and 2008.

The government finally notes that other circuits will remand for determination of benefits only in narrow circumstances. *See, e.g., Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (7th Cir. 1994) ("If a court determines that substantial evidence does not support the Secretary's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits."); *see also Miller v. Chater*, 99 F.3d 972 (10th Cir. 1996) (remanding for a *fifth* administrative hearing, but warning that "the Secretary is not entitled to adjudicate a case ad infinitum until [he] correctly applies the proper legal standard and gathers evidence to support [his] conclusion" (internal quotation marks omitted)). If, as the government argues, crediting-as-true is a de facto finding of disability, then our circuit's precedent is badly misaligned with that of other circuits.

Of course, because the crediting-as-true rule is part of our circuit's law, only an en banc court can change it. Although no judge has chosen to call for en banc rehearing in this case, I am hopeful that the en banc court will consider the argument when it is presented more directly in another case (e.g., one where there is an explicit remand for immediate payment of benefits based on the rule). Because the crediting-as-true rule applies in every case where a court finds no substantial evidence to support the Commissioner's decision, the issue is of exceptional importance. This is particularly so because the "Social Security hearing system is probably the largest adjudicative agency in the western world." *Heckler*

*v. Campbell*, 461 U.S. 458, 461 (1983) (noting that 2.3 million claims for disability benefits were filed in 1981).

## II

Judge O'Scannlain has voted to grant the petition for rehearing en banc and Judge Selna has so recommended. Judge Hawkins has voted to deny the petition for rehearing en banc.

The full court has been advised of the petition for rehearing en banc and no active judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for rehearing en banc is DENIED. No further petitions for rehearing or rehearing en banc may be filed.

---

## OPINION

SELNA, District Judge:

### *OVERVIEW*

Priscilla Vasquez ("Vasquez") appeals from the district court's grant of summary judgment for the Commissioner of Social Security ("the Commissioner") upholding a denial of Disability Insurance Benefits under 42 U.S.C. § 401 *et seq.* and Supplemental Security Income benefits under 42 U.S.C. § 1381 *et seq.* Vasquez claims that the Commissioner improperly discounted her symptom reporting, failed to consider evidence of her severe mental impairment, and improperly applied principles of res judicata.

We vacate the district court's judgment and remand to the Commissioner for a hearing on the issue of whether Vasquez is entitled to benefits.

*FACTUAL BACKGROUND*

Vasquez applied for Disability Insurance Benefits and Sup-plemental Security Income benefits in September 1997, alleg-ing an inability to work since October 1995 because of low back pain and other musculoskeletal impairments. The appli-cation was denied initially and again on reconsideration. At the initial hearing, Administrative Law Judge ("ALJ") Rich-ard Stacy ("ALJ Stacy") also found that Vasquez was not dis-abled and denied her application. The decision of ALJ Stacy discussed Vasquez's back injuries and limited education, but did not discuss whether Vasquez may have also suffered from cognitive impairments because Vasquez did not raise that issue in her application. The Social Security Administration ("SSA") Appeals Council denied review of ALJ Stacy's deci-sion.

Vasquez subsequently filed a new application for benefits, alleging an inability to work since November 2001. After the Commissioner denied her application, she requested an ALJ hearing. Vasquez's application specified that she suffered from ongoing problems due to a back injury, as well as cogni-tive impairments resulting in significant learning problems.

ALJ Sandra Rogers ("ALJ Rogers," or "the ALJ") found that while Vasquez was not able to perform her past work as a housekeeper due to a "severe" back disorder, she retained the residual function capacity to perform "light exceptional work activity" and therefore was not disabled. Although ALJ Rogers did not make any explicit findings regarding Vasquez's alleged cognitive impairments, she discussed the mental health and capacity evidence presented, and seems to have implicitly found that these impairments were not "se-vere" and/or did not impact Vasquez's residual function capacity.

In appealing this decision to the SSA Appeals Council, Vasquez presented additional evidence of psychological test-

ing from Dr. Ubaldo Sanchez ("Dr. Sanchez") to bolster her claims of cognitive impairment. The Appeals Council reviewed the ALJ's findings as well as the additional evidence and found that Dr. Sanchez's report did not warrant any change in the ALJ's decision. The district court affirmed the ALJ's decision when it granted summary judgment in favor of the Commissioner and declined to set aside the ALJ's denial of benefits.

## DISCUSSION

### Standard of Review

We review the district court's order affirming denial of benefits *de novo*. *Schneider v. Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000). It may "set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Id.* "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). This Court "review[s] the administrative record as a whole" to determine whether substantial evidence supports the ALJ's decision. *Id.* "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id.* "[W]here the evidence is susceptible to more than one rational interpretation," the ALJ's decision must be affirmed. *Id.* at 1039-40.

### Credibility of Vasquez's Symptom Reporting

Vasquez argues that ALJ Rogers did not properly credit her symptom reporting when she found that Vasquez's allegations as to the "intensity, persistence, and limits effects of [her] symptoms were not well supported by the probative evidence and [were] not wholly credible."

**[1]** In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036 (internal citations and quotation marks omitted). The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives "specific, clear and convincing reasons" for the rejection. *Id.*

Vasquez testified that she is in "chronic pain." She stated that it "hurts to sit in chairs" and "hurts walking." In the pain questionnaire she filled out as part of her benefits application, she specified that she feels a "stabbing pain" in her back, which spreads to her legs and toes, brought on by movement and seeming to worsen when she sits or walks, "everyday throughout the day." Complaints of ongoing, unrelieved pain were also recorded by her physicians and incorporated in Vasquez's medical reports.

**[2]** After finding that Vasquez "has a back disorder which is a severe impairment," the ALJ acknowledged that Vasquez's injuries "could reasonably be expected to produce *some* of the pain and other symptoms alleged." (Emphasis added.) This satisfied the first prong of the ALJ's inquiry regarding the credibility of Vasquez's complaints. *See Lingenfelter*, 504 F.3d at 1035-36.

The ALJ went on, however, to reject Vasquez's allegations, stating:

after carefully considering all of the medical and documentary evidence, the undersigned finds that, in light of discrepancies between the claimant's assertions and information contained in the reports of the treating and examining physicians, the allegations by the claimant as to the intensity, persistence, and limiting effects of his [sic] symptoms were not well supported by the probative evidence and are not wholly credible. The claimant's complaints regarding the frequency, severity and duration of her back pain and lower extremity pain are not consistent with the objective medical evidence and are generally consistent [sic] with the limitations found.

[3] This statement does not comport with the requirements laid out by the Court in *Lingenfelter,* 504 F.3d at 1036. The ALJ did not cite any evidence of malingering, and therefore, her adverse credibility findings may only be supported by "specific, clear and convincing reasons." *Id.* However, the ALJ made no specific findings in support of her conclusion that Vasquez's claims were not credible, other than the vague allegation that they were "not consistent with the objective medical evidence."[1]

---

[1]Although the Court in *Lingenfelter* rejected the ALJ's substantive grounds for rejecting the claimant's testimony, the opinion suggests the level of detail and specificity required:

In finding a consensus, the ALJ cited to the three state agency physicians, the two doctors who examined Lingenfelter for the California Workers' Compensation Appeals Board, and Dr. Ovadia, who each made findings consistent with a capacity for sedentary work. Without explanation, however, the ALJ completely ignored the medical opinions of Lingenfelter's two primary treating physicians, who expressly corroborated his alleged pain and limitations and found him incapable of *any* work.

*Lingenfelter*, 504 F.3d at 1037 (emphasis in original). Here, there was no level of comparable analysis from which we could evaluate the sufficiency of the credibility determination.

**[4]** To support a lack of credibility finding, the ALJ was required to "point to specific facts in the record which demonstrate that [Vasquez] is in less pain than she claims." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The Commissioner's argument that the "ALJ found that Claimant's complaints were inconsistent with the findings reported by Drs. Capen and Singh" is not supported by the record. The cited portion of the ALJ's opinion does discuss the findings of Drs. Capen and Singh, but the ALJ did not discuss these findings, or *any* specific medical evidence when she rejected Vasquez's subjective complaints of pain.[2]

The Commissioner's argument that the ALJ's findings were proper under 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3)[3] is similarly incorrect. Both regulations deal with evidence the Commissioner should consider in determining how a claimant's symptoms may affect her capacity to function under the guidelines; neither describe what findings are required before an ALJ can reject a claimant's allegations of disabling pain.[4] In any event, it does not appear that the ALJ complied either with the requirements laid out by this Court, *see Lingenfelter*, 504 F.3d at 1036; *Dodrill* 12 F.3d at 918, or its own regulations, *see* §§ 404.1529(c)(3) and

---

[2]Moreover Dr. Capen's findings would be an inadequate basis for discounting Vasquez's symptom reporting given that the ALJ specifically found that "Dr. Capen's opinion is not supported by the overall evidence of the record" and not "afforded significant weight in the decision[ ]making process." (ER 26.)

[3]References to all regulations are to Title 20 of the Code of Federal Regulations, last updated in 2006. No relevant changes were made to any regulations between the time the ALJ heard Vasquez's case and the last update to the regulations.

[4]Sections 404.1529(c)(3) and 416.929(c)(3) merely state that the ALJ will consider any evidence presented by the claimant regarding her subjective symptoms, and list some relevant factors that may be included in assessing the impact of those symptoms. Neither section states what findings are required before an ALJ may discredit a claimant's subjective reports of pain.

416.929(c)(3), in assessing Vasquez's subjective complaints of disabling pain.

**[5]** The appropriate judicial response in situations where the ALJ fails to give an adequate justification for rejecting a claimant's pain testimony was first discussed in *Varney v. Secretary of Health and Human Services* (*Varney II*), 859 F.2d 1396, 1398-99, 1401 (9th Cir. 1988). There, we adopted the Eleventh Circuit's credit-as-true rule, holding that the Commissioner must accept, as a matter of law, a claimant's subjective pain testimony if the ALJ fails to articulate sufficient reasons for refusing to credit it. *Id.* However, the holding in *Varney II* was specifically limited to cases "where there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited." *Id* at 1401.

**[6]** Since *Varney II*, a split in authority has developed over whether the rule is mandatory or discretionary in this Circuit. *Compare, e.g.*, *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (holding that when an ALJ improperly rejects a claimant's testimony regarding his limitations, and the claimant would be disabled if his testimony were credited, the testimony must be credited as a matter of law); *with Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (discussing the Circuit's conflicting case law and holding that the doctrine is not mandatory because the court has "some flexibility in applying the crediting as true theory" (internal quotation marks omitted)). It is not necessary for us to resolve the conflict at this time, however, because, unlike *Varney II* or *Lester*, here there are outstanding issues that must be resolved before a proper disability determination can be made.[5] *See*

---

[5]This is the distinction which the dissent fails to perceive in suggesting that only an en banc panel may properly resolve this case. That would certainly be true if we applied the credit-as-true rule because no further find-

*Varney II* at 859 F.2d 1401 (declining to address whether the credit-as-true rule should be adopted in cases where a remand for further proceedings is required before a disability determination can be made); *Lester*, 81 F.3d at 834 (holding that the credit-as-true rule is mandatory, but only where the claimant would be disabled if his testimony were credited).

[7] This Court has recognized that there are other factors which may justify application of the credit-as-true rule, even where application of the rule would not result in the immediate payment of benefits. In *Hammock v. Bowen*, 879 F.2d 498 (9th Cir. 1989), we compared the limited application of the credit-as-true rule in *Varney II* with the rule in the Eleventh Circuit, which credits the claimant's pain testimony whenever the ALJ fails to articulate its reasons for doing so. *Id.* at 503 (citing *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987)). Without adopting a general rule, we found that, because claimant was of advanced age and had already experienced a severe delay in her application, it was appropriate to apply the credit-as-true rule in that case. *Id.* at 503. We applied the rule even though we remanded for a further determination of whether benefits were due, and in doing so instructed the ALJ to credit the claimant's symptom testimony. *Id.* at 503-04.

[8] Similar facts are present in this case. Vasquez filed her application for benefits in October 2002. At present, she is 58 years old. Further, as we noted in *Varney II*, the purpose of the credit-as-true rule is to discourage ALJs from reaching a conclusion about a claimant's status first, and then attempting to justify it by ignoring any evidence in the record that suggests an opposite result. *Varney II*, 859 F.2d at 1398. By

---

ings are required on remand. *United States v. Hardesty*, 977 F.2d 1347, 1348 (9th Cir. 1992) (en banc) (per curiam). But that is not this case, and it is no "dodge" to avoid a choice among rules which this case does not require. (Dissent at 8428-29 n.2.) To be sure, orderly development of the Circuit's law in this area might benefit from an en banc review (*see id.* at 8432), but not because this case compels it.

requiring the ALJ to specify "any factors discrediting a claimant at the first opportunity," the rule ensures that pain testimony is carefully assessed, and helps prevent unnecessary duplication in the administrative process. *Id.*

[9] For all these reasons, we follow *Hammock* in applying the credit-as-true rule in this instance. On remand, the ALJ is instructed to accept Vasquez's symptom testimony as true in determining whether she is entitled to benefits.

### *Evidence Vasquez was Severely Impaired*

[10] In the five-step sequential process used to evaluate an applicant's disability status, step two consists of determining whether a claimant has a "medically severe impairment or combination of impairments." *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). Vasquez argues that the ALJ's finding of no mental impairment was improper and not supported by substantial evidence. We hold that the ALJ should have been afforded an opportunity to consider additional evidence generated between the ALJ's decision and the Appeals Council hearing, and remand for that purpose.

The medical evidence confirms at least some degree of cognitive impairment. In February 2004, Owen Lum, M.D. ("Dr. Lum") interviewed and evaluated Vasquez without administering any tests. Dr. Lum diagnosed Vasquez as having "adjustment disorder with mixed moods" and assessed a Global Assessment of Functioning ("GAF") Level of 67. This number indicates an assessment of mild symptoms and some difficulty functioning.[6] Assessing her functional capacity, Dr.

---

[6]American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition Text Revision (2000) ("DSM IV-TR"), p. 34 (describing the GAF scale and noting that a level between 60 and 70 indicates a patient with "some mild symptoms" or "some difficulty in social, occupational, or school functioning," but who is "generally functioning pretty well, [and] has some meaningful interpersonal relationships").

Lum wrote that Vasquez is able to perform simple and repetitive tasks, and in the absence of major psychiatric problems, could perform detailed tasks. He stated that she "is able to accept instructions from supervisors and interact with coworker[s] and the public," and further, that she could "work on a consistent basis" and "attend a regular work situation[,] secondary to the absence[ ] of major cognitive deterioration."

The month after Dr. Lum's interview, Vasquez was interviewed and tested by psychologist Ute Kollath, Ph.D. ("Dr. Kollath"). Dr. Kollath administered WMS-III, WAIS-III and Bender-Gestalt examinations. She reported that Vasquez's IQ score was a 62, placing her in the "mildly mentally retarded range"; however, Dr. Kollath further stated that "this appears to be an underestimate of her intellectual level of functioning and variable motivation might account for this." Her clinical impression was that Vasquez placed in "at least the borderline range." Her Global Measure of Impairment ("GMI") score was less than 50, which demonstrates a memory in the "impaired range"; however, Dr. Kollath reported that this score "appears to be an underestimate of her memory functioning" because she was "able to recall some, detailed autobiographical information."

Dr. Kollath stated that her overall impression was "of an individual who could well have cognitive impairment," but stated that Vasquez's "limited engagement towards the testing process interfered with a full assessment." Dr. Kollath diagnosed an "Adjustment Disorder with Depressed Mood," "Learning Disorder NOS," and a GAF of 60. This GAF score indicates "moderate symptoms" or moderate difficulty in "social, occupational, or school functioning." DSM IV-TR, p. 34. She specifically noted that Vasquez appeared "to be able to maintain concentration, persistence, and pace," was able to "relate well in the interview and would be able to appropriately interact with supervisors and co-workers in a job setting." She found her able to perform "simple repetitive tasks," but "unable to perform detailed and complex tasks."

The ALJ referenced the findings of Drs. Lum and Kollath in her decision, though she made no specific findings regarding Vasquez's mental health. In assessing the objective evidence of impairment obtained from Dr. Kollath's testing, the ALJ noted Dr. Kollath's observations that the scores were likely "underestimates of her true abilities."

After the ALJ issued her decision denying benefits, Vasquez was seen by Dr. Sanchez for further psychological evaluation and testing. Vasquez argues that this additional evidence, which she submitted to the Appeals Council, clearly demonstrates that she did suffer from a mental impairment during the relevant time period.[7]

Dr. Sanchez reviewed Vasquez's records and administered the following examinations: WAIS-III adult intelligence scale; WMS-III memory scale; 3(WRAT3) wide range achievement test; Reyes 15 Items; and a mental status examination. His report noted that she put forth "full effort" during the evaluation, demonstrated no indication of malingering during the Reyes 15 Items test, and "appeared as a credible claimant."

Dr. Sanchez's report indicates that Vasquez's Full Scale IQ score is a 65, which "indicates that she is currently functioning in the mentally retarded range of measured intelligence." It further states that,

> all of her scores fall within the borderline and mentally retarded range indicating limited general verbal intelligence; conceptual thinking; numeric manipulation; immediate auditory recollection; gen-

---

[7]Because this evidence was submitted to and considered by the Appeals Council, and is part of the administrative record, this Court may consider it in reaching its final decision even though the ALJ did not have the benefit of this information during the initial application hearing. *Bilby v. Schweiker*, 762 F.2d 716, 718 n.2 (9th Cir. 1985).

eral knowledge; social judgment, common sense, reality awareness, judgment in practical situation; limited ability to differentiate between essential and non-essential details; limited capacity for sustained effort, attention, concentration and mental efficiency . . .

Her scores on the memory examination demonstrated "significantly below average memory skills." Dr. Sanchez assessed that Vasquez could read at a third grade level, spell at a fourth grade level, and perform arithmetic at a first grade level. He diagnosed "Major Depressive Disorder," "Pain Disorder," "Reading Disorder," "Disorder of Written Expression," "Mathematics Disorder," and "Borderline Intellectual Functioning," with an overall GAF of 49. The GAF score indicates an assessment that Sanchez suffered from "serious symptoms" or a serious "impairment in social, occupation, or school functioning." DSM IV-TR, p. 34.

Dr. Sanchez further stated that while Vasquez "would not have any difficulty being socially appropriate, "[s]he would have moderate difficulty in concentrating, focusing and keeping up with the pace of a working environment given [her] preoccupation with pain and her current level of emotional functioning." He stated that she was "viewed as being able to perform simple and repetitive tasks," but was not able to determine whether she would be able to tolerate the stress of an 8-hour day, 40-hour week on a consistent basis.

Dr. Sanchez's report suggests that Vasquez may suffer from cognitive impairments. While Dr. Kollath reported Vasquez's IQ score at 62, she noted that the score "appear[ed] to be an underestimate of her intellectual level of functioning." She further stated that while Vasquez appeared to be an "individual who could well have cognitive impairment," her "limited engagement towards the testing process interfered with a full assessment." In comparison, Dr. Sanchez reported that Vasquez was a "credible claimant" and found that

Vasquez's IQ was slightly higher (a Full Scale score of 65) but still within the "mentally retarded range of measured intelligence."

**[11]** If credited, Dr. Sanchez's statements could certainly support a finding of mental impairment. His report plainly states that Vasquez has "significantly below average memory skills," and test scores indicating limited social judgment, common sense, capacity for sustained effort, attention and mental efficiency. Further, his GAF assessment indicates "serious symptoms" or a "serious impairment in social, occupation, or school functioning." *See* DSM IV-TR, p. 34.

The Commissioner argues that Dr. Sanchez's findings are contrary to the evidence presented to the ALJ (*e.g.*, the testimony of Drs. Lum and Kollath), and therefore, should not be credited. However, if the Appeals Council had remanded the case for additional review, Dr. Sanchez's findings would have enhanced the information available to the ALJ and provided additional, rather than contradictory, evidence of Vasquez's condition.

Though the ALJ expressed some hesitancy regarding the credibility of Dr. Kollath's findings, as explained above, Dr. Sanchez arrived at a similar diagnosis. Because Dr. Sanchez's findings are based on objective clinical tests, and buttressed by his statement that Vasquez appeared to be a credible claimant, they could be sufficient to show a mental impairment. *See Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Miller v. Heckler*, 770 F.3d 845, 849 (9th Cir. 1985) (where a "nontreating physician's opinion rests on objective clinical tests, it must be viewed as substantial evidence")). Moreover, to the extent Drs. Kollath and Sanchez's testimony supports a finding of mental impairment that would not have been supported by Dr. Lum's testimony, the Court may conclude that the evidence is not actually contradictory, because Dr. Lum did not perform any of the clinical tests on which Drs. Kollath and Sanchez based their opinions.

**[12]** When viewed as a whole, the medical reports suggest that Vasquez may suffer from a cognitive impairment. Because the ALJ did not have access to Dr. Sanchez's reports in deciding otherwise, she also did not account for Vasquez's mental impairments in determining her residual functioning capacity at step four of the disability determination. *See* § 404.1523 (noting that where a claimant has a combination of impairments, "the combined impact of the impairments will be considered throughout the disability determination process"); § 404.1545 (noting that where a claimant has more than one impairment, the SSA will consider all of them, even those that are not severe, in determining the claimants residual functioning capacity).

Neither party has presented any argument regarding how Vasquez's impairments would affect a determination of her residual functioning capacity under the guidelines.[8] Thus, there are no facts presented that clearly indicate the proper outcome of steps four and five of the disability determination evaluation. For this reason, the Court cannot find Vasquez disabled and order an immediate payment of benefits. *See Harman v. Apfel*, 211 F.3d 1172, 1178-79 (9th Cir. 2000) (allowing an immediate award of benefits directed when, among other things, it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited). Rather, in cases such as these, "where the testimony of the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence," this Circuit has "consistently . . . remanded for further proceedings rather than payment of benefits." *Id.*

**[13]** Accordingly, we remand to allow the ALJ to consider Dr. Sanchez's reports in determining whether Vasquez suffers from a mental impairment, and to consider how these limita-

---

[8]Vasquez did not argue that she meets a disability "listing" for mental impairment on appeal, so that she is only entitled to benefits, if at all, if she is determined to be disabled at step five of the sequence.

tions affect her residual functioning capacity and ability to perform other work at steps four and five of the disability determination sequence.

### Res Judicata

**[14]** "[T]he principle of res judicata should not be rigidly applied in administrative proceedings." *Lester v. Chater*, 81 F.3d at 827 (citing *Gregory v. Bowen*, 844 F.2d 664, 666 (9th Cir. 1988)). Normally, an ALJ's findings that a claimant is not disabled "creates a presumption that the claimant continued to be able to work after that date." *Id.* at 827 (quoting *Miller*, 770 F.2d at 848). However, the presumption does not apply "where the claimant raises a new issue, such as the existence of an impairment not considered in the previous application." *Id.*

**[15]** In *Lester*, the Court found that the Commissioner could not apply res judicata principles to an earlier ALJ decision in determining a claimant's eligibility where the claimant (1) alleged a mental impairment not raised in his earlier application and (2) turned 50 after the date of the earlier decision and thus entered the "approaching advanced age" category as defined by the applicable regulations. *Id.* at 828. The facts in this case are exactly parallel to *Lester* in that Vasquez did not raise the issue of her mental impairment during her 1997 application before ALJ Stacy, but did raise the issue during her 1999 application before ALJ Rogers.

**[16]** Additionally, Vasquez turned 50 after the date of ALJ Stacy's decision and entered the "closely approaching advanced age" category. Thus, ALJ Rogers improperly applied res judicata. ALJ Rogers explicitly noted that she gave "weight to the prior determination of [ALJ] Stacy" in reaching her determination, and because Vasquez was unable to provide evidence of "changed circumstances," applied principles of res judicata in her decision. However, because Vasquez raised a new issue not before ALJ Stacy and entered

the "closely approaching advanced age" category, it was improper for ALJ Rogers to apply a presumption of continuing non-disability when deciding Vasquez's second application. *See id.* at 827.[9]

[17] Where an ALJ has committed legal error, this Court may set aside the Commissioner's denial of benefits. *Schneider*, 223 F.3d at 973. However, for the reasons outlined above, we believe that, after crediting Vasquez's pain testimony and taking into account the evidence of her mental impairment, the ALJ should make a determination as to Vasquez's residual functioning capacity and entitlement to benefits in the first instance. The ALJ is further instructed that the principles of res judicata are not applicable in this case, and therefore, that ALJ Stacy's previous decision is not entitled to any degree of deference in the ultimate decision as to whether Vasquez is entitled to an award of benefits.

## CONCLUSION

We grant Vasquez's petition and remand with instructions to remand to the Commissioner for a further determination of whether benefits are due.

**VACATED AND REMANDED**. Costs on appeal to Appellant.

---

[9]The Commissioner argues that because ALJ Roger's found "no severe mental impairment," Vasquez could not establish "changed circumstances" during the relevant period. This argument is irrelevant, because as noted above, a claimant defeats the presumption of continuing non-disability by raising a new issue in a later application. *See Lester*, 81 F.3d at 827. To the extent the Commissioner's argument implies that res judicata is barred only when an applicant establishes a new, severe impairment in a later proceeding, the argument is circular. As the Court explained in *Lester*, all an applicant has to do to preclude the application of res judicata is raise a new issue in the later proceeding. *See id.* There would, of course, be little point in saying that a claimant raising a new issue can escape the presumption of continuing non-disability, but only after the claimant has already proven the impairment is severe.

HAWKINS, Circuit Judge, concurring:

## I.   INTRODUCTION

This case involves application of the so-called "credit-as-true" rule. When an Administrative Law Judge ("ALJ") makes an adverse credibility finding with respect to a witness's testimony in a Social Security case, he or she "must make specific findings justifying that decision." *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989) (citing *Varney v. Sec'y of Health and Human Servs.* (*Varney I*), 846 F.2d 581, 584 (9th Cir.), *modified on reh'g*, 859 F.2d 1396 (*Varney II*) (9th Cir. 1988); *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986)). According to the credit-as-true rule, when an ALJ fails to provide specific, articulable reasons to support an adverse credibility finding, this court should " 'not remand solely to allow the ALJ to make specific findings regarding that testimony. Rather, [it should] take that testimony to be established as true.' " *Id.* (quoting *Varney II*, 859 F.2d at 1401).

I concur with the entirety of Judge Selna's opinion, including application of the credit-as-true rule in this case. In the dissent's view, however, there is an internal conflict among Ninth Circuit case law that makes resolution of the credit-as-true issue impossible here. I write separately to clarify why application of the credit-as-true rule is appropriate and why this case does not present an opportunity for en banc review of the conflict identified by the dissent.

## II.   DISCUSSION

This court first articulated the credit-as-true rule in *Varney II*, 859 F.2d 1396. There we stated that when an ALJ has not provided specific reasons for disbelieving a claimant's testimony, a credibility hearing is "insufficient, in itself, to warrant further proceedings." *Id.* at 1400. Thus

> [i]n cases where there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited, we will not remand solely to allow the ALJ to make specific findings regarding that testimony.

*Id.* at 1401. Instead, the testimony will be "established as true" as a matter of law, and the case will be remanded with instructions to grant benefits. *Id.*

A later panel concluded that "the 'crediting as true' doctrine is [not] mandatory in the Ninth Circuit." *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003). Surveying conflicting cases, *Connett* determined that there was "no other way to reconcile" those cases than to hold that "[i]nstead of being a mandatory rule, we have some flexibility in applying the 'crediting as true' theory." *Id.* at 876. Accordingly, the court declined to enter judgment instructing the ALJ to award benefits and instead remanded the case for the sole purpose of determining "whether Connett's testimony should be credited as true." *Id.*

While *Varney II* and *Connett* do appear to be in conflict over the applicability of the credit-as-true rule where there is no other reason to remand the case to the ALJ, this case does not and should not provide an opportunity to resolve that dispute en banc. *Varney II* expressly "reserve[d] judgment as to whether to follow the [credit-as-true] rule in cases in which a remand is required for other reasons." *Id.* There is no conflict over the credit-as-true rule as applied to cases that require remand for other reasons. Because this case requires remand regardless of application of the credit-as-true rule, it does not implicate any conflict between *Varney II* and *Connett*.

We first addressed the question left open by *Varney II* in *Hammock v. Bowen*, 879 F.2d 498 (9th Cir. 1989), where we

considered a case in which further proceedings other than a credibility determination were necessary before benefits could be granted. There, we "extend[ed] *Varney II* to cover the present case because the delay experienced by Hammock has been severe and because of Hammock's advanced age." *Id.* at 503. We therefore "accept[ed] as a matter of law" the truth of the claimant's testimony and remanded for further proceedings. *Id.*

The dissent argues that *Hammock* also conflicts with *Connett*. That would be true only if *Hammock* announced a binding extension of *Varney II*'s credit-as-true rule to all cases in which an ALJ had not provided specific reasons for disbelieving a claimant's testimony, regardless whether further proceedings other than a credibility determination were required. *Hammock* has not and cannot be interpreted so broadly.

To support its claim of a conflict in this case, the dissent asserts that because "disabilities disproportionately affect older individuals," any effort to limit *Hammock*'s holding to the facts of that case is "unavailing." It also cites *Lester v. Chater*, 81 F.3d 821 (9th Cir. 1995), *Harman v. Apfel*, 211 F.3d 1172 (9th Cir. 2000), and *Benecke v. Barnhart*, 379 F.3d 587 (9th Cir. 2007), to argue that later panels of this court have interpreted *Hammock* broadly to apply to all cases, regardless of the need for remand. Dissent at 8428-29 & n.2. Neither of these arguments holds water.

First, *Hammock* says in plain language that the credit-as-true rule should apply only in "the *present case* because the delay experienced by Hammock has been severe and because of Hammock's advanced age." 879 F.2d at 503 (emphasis added). Nothing in *Hammock* indicated the court intended to establish a rule applicable beyond the limited factual context of that particular case. The dissent's *empirical* observation that the factors motivating *Hammock* are common to most Social Security cases does not render that court's decision *logically* categorical. It only makes it more likely that future

panels will exercise their discretion to apply the credit-as-true rule when remand is necessary for other reasons. (This is one such case.) That Social Security claimants are commonly elderly and their benefits typically delayed is therefore beside the point.

Nor do *Lester*, *Harman*, and *Benecke* provide a basis for concluding otherwise. The dissent argues that *Lester* stands for the broad proposition that "[w]here the Commissioner fails to provide adequate reasons for rejecting [testimony], we credit that [testimony] 'as a matter of law,'" 81 F.3d at 834, regardless of the need for remand on other issues. Dissent at 8429. Setting aside whether such an expansive interpretation of that statement has any merit, it simply was not relevant to the outcome of that case. There, after applying the credit-as-true rule, the *Lester* panel "remand[ed] for payment of benefits" because no other proceedings were necessary. *Id.* at 834. Thus, even assuming arguendo that *Lester* concluded *Hammock* extended *Varney II* across the board, that conclusion had no bearing on the result in that case and is therefore non-binding dicta. *See Coalition of Clergy, Lawyers, and Professors v. Bush*, 310 F.3d 1153, 1166 (9th Cir. 2002) (analysis that is "in no way relevant to any holding" is "dicta [which] does not bind [future] panel[s] of this court").

*Harman* provides even less support for the conclusion that *Varney II* has been extended to all cases like this one. There, we expressly addressed the circumstances under which "evidence should be credited *and an immediate award of benefits directed.*" *Harman*, 211 F.3d at 1178 (emphasis added). We concluded that testimony should be credited as true only when

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required

to find the claimant disabled were such evidence credited.

*Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir.1996)). In conformity with *Varney II*, we determined that if these three elements were met, "then remand for determination and payment of benefits [would be] warranted regardless of whether the ALJ *might* have articulated a justification for rejecting [the testimony]." *Id.* But, we concluded, application of the rule was *not* appropriate in that particular case because the vocational expert had not addressed the limitations posed by the conditions sought to be established by application of the rule. *Id.* at 1180. Accordingly, "[t]he appropriate remedy . . . [was] to remand this case to the ALJ." *Id.* Thus if *Harman* demonstrates anything, it is that *Hammock* established judicial *discretion* to apply (or not apply) the credit-as-true rule in cases where remand is necessary for other reasons. Certainly it cannot be read to mean what the dissent claims—that we *must* apply the credit-as-true rule in cases where remand is necessary for other reasons.

*Benecke* is also readily distinguishable. The dissent is correct to note that the *Benecke* panel "appl[ied] the crediting-as-true rule and only then discuss[ed] whether there were 'outstanding issues that must be resolved before a determination of disability [could] be made . . . .' " Dissent at 8428 n.1 (quoting *Benecke*, 379 F.3d at 594). It would be dubious at best, however, to interpret *Benecke*'s misconstruction of the *Harman* test as a binding extension of *Varney II* to cases in which remand is still necessary. But in any event, again assuming arguendo that such an interpretation had merit, it still would be non-binding dicta since the *Benecke* court "conclude[d] that there are *no* outstanding issues that must be resolved before a determination of disability can be made" and remanded with instructions to grant benefits. *Benecke*, 379 F.3d at 594-95 (emphasis added).

## III. CONCLUSION

According to *Hammock*, we are free to exercise our discretion (but not required) to apply the credit-as-true rule in this case. This conclusion conflicts with neither *Varney II* nor *Connett*. Whatever the merits of the claim that the en banc court should resolve the conflict between *Varney II* and *Connett*, this case simply does not provide an opportunity for doing so.

---

O'SCANNLAIN Circuit Judge, dissenting:

Because I believe that this Circuit's precedents cannot be reconciled, I must respectfully dissent from that part of the court's opinion (slip op. at 8410-12) that discusses the crediting-as-true rule. In my view, this issue can only be resolved by the court en banc. I do agree with the court's treatment of the remaining issues, including its conclusion that the Administrative Law Judge improperly rejected Vasquez's testimony and that the case should be remanded for consideration of Vasquez's ability to perform other work during steps four and five of the disability determination process.

Subsequent to our decision in this case, the government petitioned for rehearing en banc, arguing that the crediting-as-true rule is invalid because it is contrary to both statute and Supreme Court precedent. Vasquez did not respond to the government's arguments in detail, and so I do not opine whether the government is right. However, the case appears strong. The government asserts that under the Social Security Act, the Commissioner — not a federal court — is the fact-finder. *See* 42 U.S.C. § 405(g) (findings of Commissioner are conclusive so long as substantial evidence supports them). While the statute prohibits a claimant's testimony concerning pain or other symptoms alone from establishing a disability, this appears to be exactly what the crediting-as-true rule

would require. *Cf.* 42 U.S.C. § 523(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; *there must be medical signs and findings* . . . which show the existence of a medical impairment . . . which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence . . . would lead to a conclusion that the individual is under a disability." (emphasis added)). The government notes that the general rule (subject to "rare" exceptions) "is to remand to the agency for additional investigation or explanation." *INS v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam). We do not credit-as-true in only "rare" cases; according to the government, we took some factfinding responsibility away from the Commissioner in at least twenty-two cases during 2007 and 2008.

The government finally notes that other circuits will remand for determination of benefits only in narrow circumstances. *See, e.g., Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (7th Cir. 1994) ("If a court determines that substantial evidence does not support the Secretary's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits."); *see also Miller v. Chater*, 99 F.3d 972 (10th Cir. 1996) (remanding for a *fifth* administrative hearing, but warning that "the Secretary is not entitled to adjudicate a case ad infinitum until [he] correctly applies the proper legal standard and gathers evidence to support [his] conclusion" (internal quotation marks omitted)). If, as the government argues, crediting-as-true is a de facto finding of disability, then our circuit's precedent is badly misaligned with that of other circuits.

Of course, because the crediting-as-true rule is part of our circuit's law, only an en banc court can change it. Although no judge has chosen to call for en banc rehearing in this case, I am hopeful that the en banc court will consider the argument

when it is presented more directly in another case (e.g., one where there is an explicit remand for immediate payment of benefits based on the rule). Because the crediting-as-true rule applies in every case where a court finds no substantial evidence to support the Commissioner's decision, the issue is of exceptional importance. This is particularly so because the "Social Security hearing system is probably the largest adjudicative agency in the western world." *Heckler v. Campbell*, 461 U.S. 458, 461 (1983) (noting that 2.3 million claims for disability benefits were filed in 1981).

I

When a panel is faced with an irreconcilable conflict in the law of the circuit, it is required to make a sua sponte call for en banc review. In *Atonio v. Wards Cove Packing Co., Inc.*, the en banc court held that the three-judge panel facing conflicting circuit precedent erred in relying on one line of the court's authority on the basis that "it expressed the 'correct view' or, alternatively, because it was the decision 'first in line.' " 810 F.2d 1477, 1478 (9th Cir. 1987) (en banc). Rather, the court stated that "the appropriate mechanism for resolving an *irreconcilable conflict* is an en banc decision. *A panel faced with such a conflict must call for en banc review*." *Id.* at 1478-79 (emphases added). The en banc court later affirmed this holding in *United States v. Hardesty*, 977 F.2d 1347, 1348 (9th Cir. 1992) (en banc) (per curiam). In *Hardesty*, the court specifically rejected the view that "where there are two opposing lines of authority, a panel may, without calling for en banc review, follow the rule which has 'successfully posed as the law of the circuit for long enough to be relied on.' " 977 F.2d at 1348 (overruling *Greenhow v. Sec. of Health & Human Servs.*, 863 F.2d 633, 636 (9th Cir. 1988)).

## II

### A

The crediting-as-true rule creates an irrebutable presumption that testimony before an administrative law judge and rejected by him for no adequate reason is true. "[I]f the Secretary fails to articulate reasons for refusing to credit . . . testimony, then the Secretary, as a matter of law, has accepted that testimony as true." *Varney v. Sec. of Health and Human Servs.* (*Varney II*), 859 F.2d 1396, 1398 (9th Cir. 1988) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987)). The crediting-as-true rule is related to the decision on whether to remand for award of benefits; however, they are separate inquires.[1]

The court is correct to point out that the crediting-as-true rule was initially limited to cases "where there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited . . . ." *Id.* at 1401. However, the court in *Hammock v. Bowen*, 879 F.2d 498 (9th Cir. 1989), extended the *Varney II* rule, holding it applicable where "the delay experienced by [claimant] has been severe and because of [her] advanced age."[2] *Id.* at 503.

---

[1] *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (inquiries are "similar[ ]"); *Harman v. Apfel*, 211 F.3d 1172, 1178-80 (9th Cir. 2000) (applying the crediting-as-true rule but remanding for further consideration rather than immediately awarding benefits); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (applying the crediting-as-true rule and only then discussing whether there were "outstanding issues that must be resolved before a determination of disability [could] be made . . . .").

[2] The *Hammock* claimant was fifty-seven at the time of her hearing, and the period between the ALJ hearing and the ruling by the court was about three years. Unfortunately, it is not uncommon for three years to transpire between an ALJ decision and a decision by this court. This is as true of

## B

Later decisions extend the crediting-as-true rule to all cases. As stated by the court in *Lester v. Chater*, 81 F.3d 821, (9th Cir. 1995), "[w]here the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion 'as a matter of law.' " *Id.* at 834; *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (same); *Benecke v. Barnhart*, 379 F.3d 587 (9th Cir. 2007) ("Because the ALJ failed to provide legally sufficient reasons for rejecting Benecke's testimony and her treating physicians' opinions, we credit the evidence as true."). The *Lester*, *Harman*, and *Benecke* courts did not require any other conditions to be fulfilled before the court credited testimony as true.[3] Rather, the *Harman* and *Benecke* courts fol-

---

cases where the crediting-as-true is applied as it is of cases in which it is not applied. *See Nguyen v. Chater*, 100 F.3d 1462 (9th Cir. 1996) (seven-year delay between first ALJ decision and Ninth Circuit decision; no crediting-as-true); *Byrnes v. Shalala*, 60 F.3d 639 (9th Cir. 2005) (over three years' delay; no crediting-as-true); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003) (four-year delay; no crediting-as-true) Also, it is common knowledge that disabilities disproportionately affect older individuals. Accordingly, the court's attempt to dodge the split between the mandatory and discretionary crediting-as-true rules based on age and delay is unavailing. *See* slip op. at 8411-12. The court's opinion identifies the policy rationales behind the crediting-as-true rule, slip op. at 8411-12, but fails to identify why those rationales apply to the case at bar more than to cases in which the rule has not been applied.

[3]In *Harman*, the court justifies the use of the crediting-as-true rule with the policy rationales from *Varney II*. *Id.* at 1178-79. Such rationales — that the crediting-as-true rule encourages ALJs to reach a correct decision the first time, and that the rule minimizes the wait time for deserving claimants — are present in every case the crediting-as-true rule touches. The *Harman* court rejected the government's attempt to distinguish *Lester* on the basis that there actually was evidence to dispute the physician's testimony. *Id.* at 1178. Likewise, because the court remanded for further proceedings rather than for an award of benefits, *Harman* cannot be distinguished away by limiting the crediting-as-true rule to cases where remand for benefit calculation is appropriate. *Id.* at 1178-80.

lowed the bright-line rule first set forth in *Lester*: that testimony which was improperly rejected will be credited as true as a matter of law.[4]

## C

However, at least one other panel has explicitly held that the crediting-as-true rule is not mandatory. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) ("[W]e are not convinced that the 'crediting as true' doctrine is mandatory in the Ninth Circuit.") The *Connett* court identifies several cases in which remands were made to allow the ALJ to make specific credibility findings:

> In *Dodrill*, for example, our court specifically remanded for the ALJ to "articulat[e] specific findings for rejecting [the claimant's] pain testimony and the testimony of lay witnesses.". In *Nguyen v. Chater*, where the ALJ failed to consider the claimant's testimony with regard to his asthma, our court remanded with the specific proviso that "[i]t is not our intent . . . to preclude the ALJ from reopening the hearing to receive additional evidence," including, presumably, evidence regarding the claimant's

---

[4]The concurrence states that *Harman* is inapplicable because the court held that the claimant was not eligible for her "evidence [to] be credited *and* an immediate award of benefits directed" made under our test in *Smolen v. Charter*, 80 F.3d 1273 (9th Cir. 1996). *Harman*, 211 F.3d at 1178 (emphasis added). The dissent overlooks that the *Harman* court acknowledges the *Lester* rule, in fact stating that the *Smolen* rule is "built upon" it. *Id.* In *Harman*, the evidence before the ALJ, even if believed, was not enough to direct payment of benefits. Instead, the case was remanded for consideration of further evidence that was not before the ALJ but was presented to the Appeals Council. On remand, "the ALJ [might] then consider, the Commissioner then [might] seek to rebut and the VE then [might] answer questions *with respect to the additional evidence*." *Id.* at 1180. Although admittedly the court could be clearer, it never states that the ALJ may reconsider evidence already presented to the ALJ — evidence which should be credited as true under *Lester*.

credibility. *See also Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir.1995) ("We therefore remand this case to the ALJ for further findings evaluating the credibility of [the claimant's] subjective complaints . . . .").

*Id.* (alterations in original).

The *Connett* court concluded that the court has "some flexibility" in applying the crediting-as-true doctrine.[5] *Id.* None of the cases cited by the *Connett* court address the crediting-as-true doctrine, however. Furthermore, the court acknowledged the existence of "seemingly compulsory language" in other opinions of this court. *Id.* The *Connett* court decided to remand without crediting-as-true "[b]ecause there are insufficient findings as to whether Connett's testimony should be credited as true." *Id.*

D

The *Connett* court argued that "the propriety of remanding for reconsideration of credibility determinations was implicitly approved by our court en banc in *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir.1991)." *Id.* However, the en banc court never discussed the crediting-as-true rule. Thus, *Bunnell* is not particularly helpful in defining the scope of the rule. Furthermore, the decisions in *Lester*, *Harman*, and *Benecke* all came years after the *Bunnell* decision. While the *Connett* court's view that crediting-as-true is discretionary may draw support from *Bunnell*, it is hardly compelled by the en banc court's reasoning. Accordingly, I do not believe that we can ignore

---

[5]The *Connett* court does not provide guidance on how this "flexibility" is to be employed, other than by explaining that there were "insufficient findings" to justify invoking the crediting-as-true rule. Presumably this does not mean that judges of this court are supposed to make factual findings concerning technical medical matters and without the benefit of being present at a hearing.

binding circuit precedent because of a case which merely suggests that crediting-as-true is discretionary. Indeed, even if *Lester*, *Harman*, and *Benecke* are inconsistent with *Bunnell*, we lack the authority as a three-judge panel to overturn those decisions.

## III

Until the court sitting en banc resolves this conflict and clarifies how the crediting-as-true rule is to be applied in this circuit, three-judge panels will have to continue to pick among the competing lines of precedent, in violation of *Atonio* and *Hardesty*. District court judges and administrative law judges will be equally confused. Confusion is bad enough; but when panels can choose which rules apply, there is at least the perception that we do not dispense equal justice under law. Litigants will be concerned — perhaps not without cause — that sympathetic claimants will get the benefit of the crediting-as-true rule, while less sympathetic claimants are denied the benefit of the rule because the panel decides that the rule is discretionary and should not apply. This court and the district courts from which it hears appeals will be subject to litigation that would be unnecessary if the en banc court would clarify when the crediting-as-true rule applies. Of course, any step that could reduce the amount of unnecessary litigation in this Circuit would help speed up the process for other litigants — a most worthy goal indeed.

Because we lack authority to ignore either line of crediting-as-true cases, I must respectfully dissent from the court's attempt to wade through the morass that our crediting-as-true jurisprudence has become. I would stay the proceeding pending action by an en banc court.