**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MICHAEL J. DELEGANS,<br><br>              Plaintiff - Appellant,<br><br>   v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>              Defendant - Appellee. | No. 13-35184<br><br>DC No. 2:12 cv-0145 JCC<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Western District of Washington
John C. Coughenour, Senior District Judge, Presiding

Argued and Submitted July 10, 2014
Seattle, Washington

Before:     TASHIMA and MURGUIA, Circuit Judges, and CARNEY, District
Judge.[**]

Michael Delegans appeals from the judgment of the district court affirming

the denial of his application for Supplemental Security Income and Social Security

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**]     The Honorable Cormac J. Carney, United States District Judge for the
Central District of California, sitting by designation.

Disability Insurance benefits. Delegans argues, among other things, that the Administrative Law Judge ("ALJ") erred in discrediting (1) Delegans' testimony regarding his mental limitations, and (2) certain medical evidence of Delegans' mental limitations. We agree and remand for further proceedings. We reject Delegans' remaining challenges to the ALJ's weighing of the medical evidence.

**1.** The ALJ failed to provide clear and convincing reasons to discredit Delegans' testimony regarding his mental limitations. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). None of the ALJ's reasons withstands scrutiny.

First, Delegans' statements characterizing his limitations and work history are largely irrelevant. Delegans has not worked since 2007, therefore three of five of the statements on which the ALJ relied, "are of limited relevance" because they involved time periods predating the onset date of Delegans' disability. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008); *cf. Lingenfelter*, 504 F.3d at 1039. Delegans' statement that he "do[es] well at getting along" with authority figures, has marginal probative value, at best, given that Delegans directly contradicted the statement in the same questionnaire four months later. Finally, Delegans' statements that he shops in stores for forty-five minutes a day, say little about his ability to get along with coworkers and superiors and to

-2-

tolerate the stresses of a full work day.  *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Second, the ALJ improperly "isolat[ed] a specific quantum" of positive mental health evaluations.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation marks omitted).  Those evaluations contrast with numerous others that reported, for example, "worsening" depression, pressured speech, frustration, agitation, and thoughts of hurting others, and marked or severe social limitations.  An ALJ may not single out moments of good health to discredit a claimant, especially in cases involving mental impairments, which often present episodically.  *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011); *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *cf. Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011).

Third, the ALJ's discussion of Delegans' "mild" to "moderate" mental health scores focused predominately on Delegans' cognitive functioning, not his social functioning.  And, although Delegans scored in the "mild" to "moderate" range on some social metrics, he was noted on three of four of the psychological evaluations that the ALJ cited as having "marked" or "severe" limitations in his ability to "respond appropriately to and tolerate the pressures and expectations of a normal work setting."  Indeed, only one of the four evaluations reported "mild" to

-3-

"moderate" social functioning along all metrics, and that examination was administered *before* the other three, in April 2008. Early evaluations of a worsening condition are "less probative than later reports." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). And one evaluation is less convincing when three others contradict it.

In sum, Delegans' largely irrelevant statements; an isolated quantum of positive evaluations; "mild" to "moderate" mental health scores along certain metrics but not social metrics; and one early examination with "mild" to "moderate" scores along all metrics are not clear and convincing reasons to reject his testimony. Thus, the ALJ committed legal error in discrediting Delegans' testimony regarding his mental limitations.

**2.** The ALJ failed to provide specific and legitimate reasons supported by substantial evidence to discredit Drs. Halley, Kenderdine, and Widlan's contradicted opinions of Delegans' mental limitations. *See Orn*, 495 F.3d at 632.

The ALJ's analysis contains several errors. First, Dr. Halley was one of Delegans' treating physicians. As such, her opinion was entitled to special consideration, including consideration of the factors listed under 20 C.F.R. § 404.1527(c). *Orn*, 495 F.3d at 631-33. We cannot conclude on this record that the ALJ considered the 20 C.F.R. § 404.1527 factors, because the ALJ did not discuss

-4-

those factors explicitly and the factors appear to weigh in favor of some deference, given Dr. Halley's close and extended treatment of Delegans. Second, the ALJ discredited parts of Dr. Kenderdine's opinion because Dr. Kenderdine was "not qualified to assess the claimant's physical limitations." The record, however, belies the ALJ's conclusion that Dr. Kenderdine based her opinion on an assessment of Delegans' physical limitations. Rather, Dr. Kenderdine evaluated the associated effect of Delegans' physical condition on his mental condition. *Cf. Lester v. Chater*, 81 F.3d 821, 829 (9th Cir. 1996). Third, the ALJ discredited Drs. Kenderdine and Widlan's opinions partly because the opinions relied on Delegans' self-reporting. But we hold today that the ALJ improperly discredited Delegans' testimony regarding his mental limitations, undermining that basis for discrediting the medical opinions. *Cf. Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *see also Fair*, 885 F.2d at 605.

Lastly, and most fundamentally, the evidence contradicting the three doctors' opinions of Delegans' mental limitations is weak, especially the evidence of Delegans' social functioning. That evidence consists of the same evidence, listed above, to which the ALJ cited to discredit Delegans' testimony. And it amounts to a mere "scintilla," *Orn*, 495 F.3d at 630 (internal quotation marks omitted); Delegans' largely irrelevant statements and only three isolated positive

evaluations, including the April 2008 evaluation that reported "mild" to "moderate" social functioning. To credit this evidence over the evidence from two years of evaluations of a treating physician (Dr. Halley) and two examining physicians (Drs. Kenderdine and Widlan) requires "isolating a specific quantum of supporting evidence," which we may not do. *Id.* (citation and internal quotations marks omitted). Because the great weight of the record – with but a scintilla to contradict it – indicates that Delegans suffers marked or severe social limitations, and because the ALJ's analysis contains the three errors discussed previously, we conclude that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence to discredit Drs. Halley, Kenderdine, and Widlan's opinions of Delegans' social functioning.

    **3.**    We are unpersuaded by Delegans' challenges to the ALJ's assessment of the remaining medical evidence.

First, the ALJ provided clear and convincing reasons to discredit Delegans' testimony regarding his physical limitations. *See Lingenfelter*, 504 F.3d at 1036. The ALJ reasonably inferred that the overwhelming majority of treatment notes describing relatively regular bowel movements, as well as Dr. Leung's opinion of Delegans' improvement beginning in 2009, contradicted Delegans' testimony regarding the severity of his physical limitations. *Cf. Batson v. Comm'r of Soc.*

*Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). We defer to the ALJ's reasonable resolution of that conflict. *See Carmickle*, 533 F.3d at 1164.

Second, we hold, for the same reasons, that the ALJ provided clear and convincing reasons to discredit Drs. Halley and Leung's opinions, to the extent that those opinions described severe physical limitations. Those parts of the opinions are inconsistent with other treatment notes regarding Delegans' physical limitations, and with evidence of Delegans' improvement. Additionally, those discredited parts of Dr. Leung's opinion were conclusory, brief, unsupported, and incongruous. *Tommasetti*, 533 F.3d at 1041; *Batson*, 359 F.3d at 1195; *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003).

Third, the ALJ did not err in her evaluation of Delegans' hospitalization records. The ALJ considered the hospitalization records during her analysis of the severity of Delegans' impairments at step two. And the ALJ did not need to discuss specifically Delegans' respiratory failure or the March 2008 hospitalization because that evidence was not "significant probative evidence" of Delegans' physical or mental condition in the years following. *See Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam) (internal quotation marks omitted). Although the ALJ did not obtain the Harborview hospitalization records,

the record was not ambiguous or inadequate for review. *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).

Fourth, the ALJ erred by failing to address Sheila Bartlett's March 2009 mental health evaluation. But the assessment largely duplicated other evidence in the record, and we are convinced that the error was "inconsequential to the ultimate nondisability determination in the context of the record as a whole." *Molina*, 674 F.3d at 1122 (internal quotation marks omitted).

Fifth, the ALJ provided a germane reason to discredit Connie Godjikian, who qualifies as an "other" medical source. 20 C.F.R. § 404.1513(d); *see Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010). Godjikian's opinion was inconsistent with the majority of treatment notes and with evidence of improvement in Delegans' physical condition. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

**4.** Because we hold that the ALJ erred in discrediting significant evidence of Delegans' mental limitations, we agree with Delegans that the ALJ erred at step three, in her residual functional capacity ("RFC") determination, and at step five. The ALJ erred at step three in evaluating whether Delegans' impairments met or equaled listing 12.04(C), because the improperly discredited evidence of Delegans' mental impairments might show that "even a minimal

-8-

increase in mental demands or change in the environment would be predicted to cause [Delegans] to decompensate." 20. C.F.R., pt. 404, subpt. P, app. 1 § 12.04(C)(2). Similarly, we reject the ALJ's RFC and step-five determinations because the determinations failed to account for the improperly discredited evidence. *See Lingenfelter*, 504 F.3d at 1040-41. Substantial evidence, then, does not support them. *See id.*

**5.** We remand for further proceedings. Although we conclude that the ALJ improperly discredited Delegans' testimony regarding his mental limitations and Drs. Halley, Kenderdine, and Widlan's opinions of Delegans' mental limitations, we cannot conclude on the record before us that, "if the improperly discredited evidence were credited as true, the ALJ would be required to find [Delegans] disabled on remand." *Garrison v. Colvin*, No. 12-15103, 2014 WL 3397218, at *20 (9th Cir. July 14, 2014). The vocational expert's ("VE") testimony focused predominately on Delegans' physical limitations. Only one statement relevantly addressed Delegans' mental limitations: the expert testified that Delegans could work if he could have "occasional contact with the public," but not if he could have "no contact with the public." But it is unclear from the record – including Delegans' testimony and Drs. Halley, Kenderdine, and Widlan's opinions, properly credited – whether Delegans' mental impairments preclude all

public contact. It is equally unclear whether Delegans' mental impairments preclude simple, repetitive, routine work and occasional, brief contact with coworkers and superiors. Dr. Halley stated in May 2010 that, "from a mental health standpoint, I don't think Mr[.] Delegans could participate." But the ALJ is not bound by Dr. Halley's opinion – much less such an enigmatic opinion – on the ultimate determination of disability. 20 C.F.R. § 404.1527(d). This case is not "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the VE did not address the precise work limitations established by the improperly discredited testimony [and evidence]." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004); *see also Vasquez v. Astrue*, 572 F.3d 586, 597 (9th Cir. 2008). Because the VE did not meaningfully address the effect of Delegans' mental limitations, and because we cannot conclude from the record that the ALJ would be required to find Delegans disabled on remand, the third credit-as-true requirement is unmet. *See Garrison*, 2014 WL 3397218, at *20.

We, therefore, reverse and remand to the district court with instructions to remand to the Commissioner for a determination of whether Delegans' mental impairments, properly credited, render him disabled.

**REVERSED and REMANDED.**