FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JASIM ABO GHANIM,
*Plaintiff-Appellant*,

v.

CAROLYN W. COLVIN,
Commissioner of the Social Security
Administration,
*Defendant-Appellee*.

No. 12-35804

D.C. No.
2:11-cv-01954-
BAT

OPINION

Appeal from the United States District Court
for the Western District of Washington
Brian Tsuchida, Magistrate Judge, Presiding

Argued and Submitted
November 7, 2013—Seattle, Washington

Filed August 18, 2014

Before: Alex Kozinski, Chief Judge, and Richard A. Paez
and Marsha S. Berzon, Circuit Judges.

Opinion by Judge Paez;
Dissent by Chief Judge Kozinski

**SUMMARY***

**Social Security**

The panel reversed the district court's judgment affirming the Social Security Commissioner's denial of an application for Disability Insurance Benefits and Supplemental Security Income.

The panel held that the weight the administrative law judge ("ALJ") accorded to the claimant's treating providers and the ALJ's adverse credibility determination were not supported by substantial evidence. The panel further held that these ALJ errors infected the ALJ's residual functional capacity assessment and his determination that the claimant was able to perform past relevant work. The panel remanded with instructions to the district court to remand the case to the Commissioner for further proceedings.

Chief Judge Kozinski dissented because he would find that there was sufficient evidence in the record to uphold the Commissioner's decision.

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Charles W. Talbot (argued), Talbot & Associates, PS, Tacoma, Washington, for Plaintiff-Appellant.

Jenny A. Durkan, United States Attorney, Kerry Jane Keefe, Assistant United States Attorney, Lars J. Nelson (argued), Assistant Regional Counsel, David Morado, Regional Chief Counsel, Region X, and Gerald J. Hill, Assistant Regional Counsel, Social Security Administration, Seattle, Washington, for Defendant-Appellee.

**OPINION**

PAEZ, Circuit Judge:

Jasim Abo Abi Shalash Abo Ghanim appeals from the district court's judgment affirming the Social Security Commissioner's denial of his application for Disability Insurance Benefits and Supplemental Security Income. In denying Ghanim's application for benefits, the Administrative Law Judge ("ALJ") rejected the opinions of Ghanim's treating physician and other treating providers as to the severity of his impairments. The ALJ also found Ghanim's testimony about the severity of his symptoms not credible. On reconsideration, the Social Security Administration ("SSA") concluded that Ghanim was disabled after all, but determined that the onset date for his disability was March 28, 2012, rather than April 5, 2009, as Ghanim originally alleged. At issue here is only whether Ghanim is entitled to benefits for the intervening period. We hold that the weight the ALJ accorded to Ghanim's treating providers and the ALJ's adverse credibility determination are not

supported by substantial evidence. We therefore reverse and remand for further proceedings.

## I. BACKGROUND

### A. Ghanim's personal and medical history

Ghanim immigrated to the United States in 1994 as a refugee from Iraq, where he had been imprisoned and tortured for two years. He worked consistently from 1994 to 2009 in a variety of jobs. In 2009, Ghanim's brother, who lived in Iraq and worked with the United States military, was killed. Ghanim was deeply affected by his brother's death; he had nightmares and trouble sleeping, became very forgetful, and frequently felt unsafe and hopeless. After his brother's death, Ghanim stopped working.

### 1. Treating providers

In July 2009, Ghanim began receiving counseling and psychiatric care, first at Highpoint Medical Clinic and then at Harborview Medical Center. At Harborview Medical Center, Ghanim met with several different medical professionals, including Christine Elizabeth Youdelis-Flores, M.D., Nina Spellman Geiger, ARNP, Lawrence McCann, LICSW, and John Blatchford, LICSW. All of these individuals met with Ghanim several times over the course of his treatment. Their treatment notes reflect both ongoing psychological impairment—including depression, difficulty sleeping, nightmares, nervousness, memory loss, and anger—and some signs of improvement—such as higher energy, higher activity levels, and brighter mood. The treatment notes also show that Ghanim was diagnosed with major depressive disorder and post-traumatic stress disorder ("PTSD"), for which he was

prescribed numerous anti-depressant and anti-anxiety medications.

In March 2010, Geiger and McCann submitted a Psychological Evaluation to the Washington State Department of Social & Health Services. The evaluation contained diagnoses of major depressive disorder and PTSD. The evaluation also noted marked cognitive and social impairment related to Ghanim's inability to manage social situations.[1]   In October 2010, Dr. Youdelis-Flores and Blatchford sent a letter to Ghanim's attorney, expressing their opinion that "[d]ue to his mental illness, we feel it is highly unlikely [Ghanim] would be able to engage in meaningful adult activities or employment in the near future." In support of this opinion, they referred to his symptoms, including nightmares, intermittent sleep, low energy, and depressed mood, and the diagnoses of PTSD and major depression, recurrent, with psychotic features.

### 2. *Examining physicians*

In June 2009, Ghanim was examined by Victoria McDuffee, Ph.D., a psychologist.   Ghanim reported "increasing agitation, hypervigilance, nightmares, [and] daily intrusive thoughts."  Dr. McDuffee observed that Ghanim presented as "emotional[ly] labile, angry, hostile, and resentful" and that he appeared "paranoid, suspicious of others," and "extremely 'edgy.'" Dr. McDuffee administered a mental status examination, with the following results: (1) mini-mental status score: 30 (no cognitive impairments),

---

[1] Gieger and McCann believed that Ghanim's cognitive functioning became impaired in stressful social situations. They did not diagnose him with any cognitive disorders.

(2) Beck depression score: 49 (severe depression), (3) Beck anxiety score: 44 (severe anxiety).[2]  She identified a number of severe functional limitations, including inability to: relate appropriately to coworkers and supervisors; interact appropriately in public; respond appropriately to, and tolerate, the pressures and expectations of a normal work setting; and maintain appropriate behavior.  She diagnosed Ghanim with PTSD, personality disorder, major depressive disorder, and generalized anxiety disorder.

In December 2009, at the request of Washington's Department of Disability Services, Ghanim met with Wayne C. Dees, Psy.D.  Dr. Dees also administered a mental status exam.  He noted that Ghanim was "generally alert and friendly throughout the evaluation, but mildly irritable at times."  He also noted, however, that Ghanim's "presentation was consistent with anxious mood, and his affect was blunted."  He concluded that Ghanim "endorses symptoms of PTSD, including exaggerated startle, hypervigilence, fear and avoidance, intrusive thoughts, emotional numbing, and nightmares."  Ghanim fared poorly on the cognitive portion of the test, and Dr. Dees concluded that he has a "severely impaired ability to learn" and "[o]verall cognitive functioning appears to be impaired."  He indicated that Ghanim was able to complete "simple but not complex instructions."  However, Dr. Dees thought that Ghanim's "cognitive deficits may not be as severe as he claims," and stated that "malingering is suspected based on [Ghanim's] performance during the evaluation."  He did not make a definitive diagnosis of malingering, however, explaining that further evaluation was

---

[2] Dr. McDuffee checked moderate to severe next to Ghanim's anxiety score.  However, according to the scale on the evaluation form, a score of 44 is within the severe range.

recommended before a determination could be made. He diagnosed Ghanim with depressive disorder NOS, PTSD, anxiety disorder NOS, and cognitive disorder NOS.[3]

### 3.   Reviewing physicians

In December 2009, the state agency's medical consultant, Gerald L. Peterson, Ph.D., performed a mental residual functional capacity assessment. He determined that Ghanim's only limitation was a moderate limitation in his ability to complete a normal workday without interruption from psychologically-based symptoms. Dr. Peterson explained that Ghanim could perform "simple and complex tasks," was described as friendly and cooperative, socialized with friends and attended religious services, and was able to move and find stable employment. In February 2010, another state medical consultant, Beth Fitterer, Ph.D., reviewed Dr. Peterson's mental residual functional capacity assessment. She noted that updated medical records did not alter the previous opinion and affirmed Dr. Peterson's assessment. Neither Dr. Peterson nor Dr. Fitterer ever met with Ghanim, and it is not clear what medical records they reviewed at the time of their respective assessments.

## B.  Procedural history

On October 15, 2009, Ghanim applied for Disability Insurance Benefits and Supplemental Security Income, claiming he had been disabled since April 5, 2009. His application was denied. He filed a request for

---

[3] NOS stands for "Not Otherwise Specified." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 381 (4th ed. TR 2000) ("DSM-IV-TR").

reconsideration, which was also denied. He then requested a hearing before an ALJ, which was held in December 2010.

At the hearing, Ghanim testified about the extent of his impairments. He reported that even with medication, he suffered from "constant[]" nightmares. He also testified about his social anxiety, stating that "I . . . confine myself to my home, just sitting there because I don't want to go outside and interact with people." Finally, he explained how his depression caused him to "neglect" himself. He would allow dirty clothes to pile up. He was afraid to cook because his memory was poor and he would forget things in the oven. He testified that he depended heavily on his friend and caretaker, Majid Al-Haider, for assistance with his basic self-care and for much of his limited social interactions. Al-Haider would visit him daily, help him with chores, take him outside, and occasionally take him to spend time with his family.

The only other witness to testify at the hearing was Iris Brookshire, a vocational expert. The ALJ sought her opinion on whether a person with Ghanim's limitations could perform any gainful work in the national economy. To that end, the ALJ posed a hypothetical question describing an individual who had limited English proficiency but who could understand, remember, and carry out basic tasks, had an average ability to perform sustained work activities, could respond appropriately to supervision and coworkers, and could deal with changes within a stable work environment. The vocational expert opined that such a person would be able to perform work as a kitchen helper and a commercial cleaner. However, if the individual had difficulty completing a normal workday and would miss more than two days of work per month due to his mental health impairments, the

vocational expert testified, the individual would not be able to find work as a kitchen helper or commercial cleaner.

Ghanim also submitted a letter from Al-Haider in support of his application. Al-Haider described Ghanim's personal history and his current difficulties. Most notably, he stated that Ghanim "can't do anything without help. He can't cook or wash his clothes."

The ALJ concluded that Ghanim was not disabled within the meaning of the Social Security Act and denied his application for benefits. Although the ALJ found that Ghanim suffered from depression and PTSD, he concluded that Ghanim's functioning remained relatively unimpaired. In doing so, he discounted the opinions of all of Ghanim's treating providers, finding that their opinions conflicted with the treatment notes in the record and were based on Ghanim's self-reports, which the ALJ found not credible. The ALJ also rejected Ghanim's testimony as not credible, because (1) it conflicted with the treatment records; (2) it conflicted with two examining physicians' evaluations; (3) it conflicted with prior self-reports; (4) it was belied by the types of daily activities Ghanim engaged in; and (5) other record evidence cast doubt on Ghanim's credibility. Finally, the ALJ rejected Al-Haider's characterization of Ghanim's capabilities because it conflicted with Ghanim's own statements. Based on his assessment of the medical and lay evidence, the ALJ determined that Ghanim could follow basic instructions in English, could carry out simple tasks, had the ability to work on a regular basis, and could respond appropriately to supervision and coworkers. Relying on the vocational expert's testimony, the ALJ concluded that Ghanim could perform his past work as a kitchen helper and a commercial cleaner.

The Appeals Council denied Ghanim's request for review. The district court affirmed, and this appeal followed. While this appeal was pending, Ghanim filed another request for reconsideration with the SSA. He submitted updated medical records, and this time, the SSA concluded that Ghanim was disabled as of March 29, 2012. In light of this development, this case is limited to whether Ghanim is entitled to benefits for the period beginning April 5, 2009 and ending March 28, 2012.[4]

## II. STANDARD OF REVIEW

"We review the district court's order affirming the ALJ's denial of social security benefits de novo, and reverse only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Id.* at 1111. However, in conducting our review, we "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

---

[4] Given the result we reach, we need not address whether the SSA's reconsideration of its denial of benefits constituted new evidence warranting remand under 42 U.S.C. § 405(g). *See Melkonyan v. Sullivan*, 501 U.S. 89, 97–99 (1991); *Luna v. Astrue*, 623 F.3d 1032, 1034–35 (9th Cir. 2010).

## III. DISCUSSION

To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, determining: "(1) whether the claimant is 'doing substantial gainful activity'; (2) whether the claimant has a 'severe medically determinable physical or mental impairment' or combination of impairments that has lasted for more than 12 months; (3) whether the impairment 'meets or equals' one of the listings in the regulations; (4) whether, given the claimant's 'residual functional capacity,' the claimant can still do his or her 'past relevant work'; and (5) whether the claimant 'can make an adjustment to other work.'" *Molina*, 674 F.3d at 1110 (quoting 20 C.F.R. §§ 404.1520(a), 416.920(a)).[5] Ghanim argues that the ALJ failed to consider a relevant mental impairment at step two. He further argues that, with respect to the mental impairments the ALJ did consider, his assessment of the medical evidence was not supported by substantial evidence, his adverse credibility determination was not supported by substantial evidence, and his rejection of lay witness evidence was not supported by a germane reason. He contends that these errors led to an improper residual functional capacity determination at step four. We address each argument in turn.

### A. Step two analysis

Ghanim's first argument warrants only a brief discussion. He argues that the ALJ erred in failing to consider the diagnosis of major depressive disorder with psychotic

---

[5] "A claimant's 'residual functional capacity' is what a claimant can still do despite [his] limitations." *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996) (quoting 20 C.F.R. § 404.1545(a)).

features. Ghanim never raised this argument before the district court. Accordingly, it is waived, *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006), and we do not address it further.

## B. Step four analysis

At step two, the ALJ identified two medically determinable severe impairments: depressive disorder and PTSD. We turn to the ALJ's determination of Ghanim's residual functional capacity and ability to perform past relevant work in light of these impairments.

### 1. Medical evidence

Generally, the opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c). "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (internal quotations omitted) (alterations in original); *see also* 20 C.F.R. § 404.1527(c)(2)). To reject an uncontradicted opinion of a treating physician, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Even if a treating physician's opinion is contradicted, the ALJ may not simply disregard it. The ALJ is required to consider the factors set out in 20 C.F.R. § 404.1527(c)(2)–(6) in determining how much weight to afford the treating physician's medical opinion. *Orn*, 495 F.3d at 631; 20 C.F.R. § 404.1527(c)(2). These factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician, the "[n]ature and extent of the treatment relationship" between the patient and the treating physician, the "[s]upportability" of the physician's opinion with medical evidence, and the consistency of the physician's opinion with the record as a whole. 20 C.F.R. § 404.1527(c)(2)–(6). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." *Orn*, 495 F.3d at 631. Similarly, an ALJ may not simply reject a treating physician's opinions on the ultimate issue of disability. *Holohan*, 246 F.3d at 1202–03. An ALJ may only reject a treating physician's contradicted opinions by providing "specific and legitimate reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008); *accord Holohan*, 246 F.3d at 1202–03.

Only physicians and certain other qualified specialists are considered "[a]cceptable medical sources." *Molina*, 674 F.3d at 1111 (alteration in original); *see also* 20 C.F.R. § 404.1513(a). Nurse practitioners and therapists are considered "other sources." 20 C.F.R. § 404.1513(d). While their opinions must still be evaluated, 20 C.F.R. § 404.1527(c), the ALJ may "discount testimony from these 'other sources' if the ALJ 'gives reasons germane to each witness for doing so.'" *Molina*, 674 F.3d at 1111 (quoting

*Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)).

Ghanim argues that the ALJ improperly weighed the medical evidence by, among other things, disregarding the opinions of his treating physician and other treating providers. The ALJ rejected Geiger and McCann's opinions that Ghanim had impaired cognitive and social functioning and Dr. Youdelis-Flores and Blatchford's opinions that Ghanim's mental illness made it "highly unlikely" that he "would be able to engage in meaningful adult activities or employment in the near future." He rejected these opinions because he regarded them as inconsistent with the treatment notes and Ghanim's daily activities and because they were based largely on Ghanim's self-reports.

A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider. *See Molina*, 674 F.3d at 1111–12 (recognizing that a conflict with treatment notes is a germane reason to reject a treating physician's assistant's opinion); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692–93 (9th Cir. 2009) (holding that a conflict with treatment notes is a specific and legitimate reason to reject treating physician's opinion). Here, however, substantial evidence does not support the ALJ's conclusion that the opinions of Dr. Youdelis-Flores, Blatchford, Geiger, and McCann were inconsistent with the treatment notes.

The treatment notes consistently reflect that Ghanim continued to experience severe symptoms, including ongoing depression and auditory hallucinations, difficulty sleeping, nightmares, and memory loss. It is true that the notes also

record some improved mood and energy level. But such observations must be "read in context of the overall diagnostic picture" the provider draws. *Holohan*, 246 F.3d at 1205; *cf. Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods . . . are not inconsistent with disability."). The fact that a person suffering from depression makes some improvement "does not mean that the person's impairment[] no longer seriously affect[s] [his] ability to function in a workplace." *Holohan*, 246 F.3d at 1205; *see also Ryan*, 528 F.3d at 1200–01.[6]

Dr. Youdelis-Flores, Blatchford, Geiger, and McCann's opinions about Ghanim's cognitive and social functioning and ability to engage in meaningful adult activities or employment also do not conflict with Ghanim's daily activities. Such a conflict may justify rejecting a treating provider's opinion. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600–02 (9th Cir. 1999) (considering an inconsistency between a treating physician's opinion and a claimant's daily activities a specific and legitimate reason to discount the treating physician's opinion). But this principle has no application here because a holistic review of the record does not reveal an inconsistency between the treating providers' opinions and Ghanim's daily activities. Although

---

[6] Similarly, the ALJ's example of one note, out of over one hundred pages of treatment notes, where Blatchford states that he was surprised by Ghanim's request for a caretaker because Ghanim did not appear to be impaired psychiatrically, is not substantial evidence of a conflict between the treatment notes and the treating providers' opinions regarding the severity of Ghanim's impairment. In fact, the statement is irreconcilable with Harborview Medical Center's own treatment plan; by that point, Dr. Youdelis-Flores had already prescribed various medications to address psychiatric problems, and the treatment team, including Blatchford, was monitoring Ghanim's progress.

Ghanim performed some basic chores and occasionally socialized, the record also reveals that he relied heavily on his caretaker, struggled with social interactions, and limited himself to low-stress environments. A claimant need not be completely incapacitated to receive benefits. *Smolen*, 80 F.3d at 1284 n.7. Ghanim's limited daily activities are not in tension with the opinions of his treating providers.

The ALJ also discounted the opinions of the treating providers because they were based largely on Ghanim's self-reports, which the ALJ found not credible. If a treating provider's opinions are based "to a large extent" on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion. *Tomasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *see also Bayliss*, 427 F.3d at 1217. However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion. *See Ryan*, 528 F.3d at 1199–1200. Here, the letter from Dr. Youdelis-Flores and Blatchford and the evaluation from Geiger and McCann discuss the providers' observations, diagnoses, and prescriptions, in addition to Ghanim's self-reports. The ALJ offered no basis for his conclusion that these opinions were based more heavily on Ghanim's self-reports, and substantial evidence does not support such a conclusion.

In sum, the ALJ improperly discounted the opinions of Ghanim's treating providers as to the severity of Ghanim's condition and his ability to work because the record revealed occasional indicia of improvement, a minimal capacity to perform basic chores, and some reliance by treating providers

on Ghanim's self-reports.[7]    This is not an adequate
evidentiary basis to reject the opinions of a treating physician
or other treating providers.[8]

### 2.  Ghanim's credibility

"In assessing the credibility of a claimant's testimony
regarding subjective pain or the intensity of symptoms, the
ALJ engages in a two-step analysis."  *Molina*, 674 F.3d at
1112 (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir.
2009)).  "First, the ALJ must determine whether the claimant
has presented objective medical evidence of an underlying
impairment which could reasonably be expected to produce
the pain or other symptoms alleged."  *Vasquez*, 572 F.3d at
591.  "If the claimant meets the first test and there is no
evidence of malingering, the ALJ can only reject the
claimant's testimony about the severity of the symptoms if
she gives 'specific, clear and convincing reasons' for the
rejection."  *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d

---

[7] Aside from the reasons discussed *supra*, the ALJ does not state any
other reason for rejecting the opinions of the treating providers.
Accordingly, we do not consider whether any other record evidence might
provide an adequate basis for rejecting any of the treating providers'
opinions.

[8] In light of the ALJ's significant errors in evaluating the opinions of
Ghanim's treating providers, particularly the opinion of Dr. Youdelis-
Flores, we need not address whether the ALJ also erred in rejecting certain
favorable opinions of the examining physicians.  We note, however, that
the ALJ did not discuss the examining physicians' opinions that Ghanim
suffered from an anxiety disorder.  As a general matter, the opinion of an
examining doctor, like the opinion of a treating doctor, "can only be
rejected for specific and legitimate reasons that are supported by
substantial evidence in the record."  *Lester*, 81 F.3d at 830–31.

1028, 1036 (9th Cir. 2007)).**[9]**  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

An ALJ may consider a range of factors in assessing credibility, including  "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284; *accord Orn*, 495 F.3d at 636.  "When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

Here, the ALJ determined that Ghanim's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Ghanim's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible . . . ."  The ALJ

---

**[9]** We have previously stated that the "specific, clear and convincing" standard applies unless an ALJ makes an actual finding of malingering. *Robbins*, 466 F.3d at 883.  This language in *Robbins* is in some tension with the above language in *Vasquez* providing that the "specific, clear and convincing" standard applies unless there is evidence of malingering. *Vasquez*, 572 F.3d at 591.  The government does not argue that a lesser standard should apply here; instead, it argues only that the ALJ provided clear and convincing reasons for rejecting Ghanim's testimony as not credible.  Accordingly, we do not address whether mere evidence of malingering might justify a lesser standard.

provided several reasons for finding Ghanim's testimony not credible.

First, the ALJ rejected Ghanim's testimony because he found it inconsistent with the treatment records. In support of his conclusion, the ALJ cited treatment notes that discussed Ghanim's "good eye contact, organized and logical thought content, and focused attention." These observations of cognitive functioning during therapy sessions do not contradict Ghanim's reported symptoms of depression and social anxiety. The ALJ also pointed to several portions of the treatment notes that describe Ghanim as "upbeat," "smiling very brightly," and "more talkative about positive things," and one note from Blatchford expressing surprise at Ghanim's request for a caretaker. As explained, however, the treatment records must be viewed in light of the overall diagnostic record. *See Holohan*, 246 F.3d at 1205, 1208; *Ryan*, 528 F.3d at 1200–01. When read as a whole, the treatment notes do not undermine Ghanim's testimony. Rather, they consistently reveal that, despite some occasional signs of improvement, Ghanim continued to suffer frequent nightmares, hallucinations, social anxiety, difficulty sleeping, and feelings of hopelessness.

Next, the ALJ rejected Ghanim's testimony as inconsistent with Dr. Dees and Dr. McDuffee's examining evaluations. The ALJ recited facts from the examining physicians' evaluations about Ghanim's cognitive capabilities and his generally pleasant demeanor. First, the ALJ's reliance on Dr. McDuffee and Dr. Dees's observations about cognitive functioning is misplaced; Ghanim primarily testified that nightmares, insomnia, social anxiety, and depression—not any cognitive impairments—caused him difficulty. Second, the ALJ improperly cherry-picked some

of Dr. Dees's characterizations of Ghanim's rapport and demeanor instead of considering these factors in the context of Dr. Dees's diagnoses and observations of impairment. *See Ryan*, 528 F.3d at 1200–01; *Holohan*, 246 F.3d at 1205, 1208. For instance, Dr. Dees also stated that Ghanim appeared "quite anxious at this time" and "endorse[d] symptoms of PTSD," and he diagnosed Ghanim with depressive disorder NOS, PTSD, anxiety disorder NOS.

The ALJ also concluded that Ghanim was not credible because his testimony conflicted with his own previous statements. First, the ALJ pointed to Ghanim's prior self-reports of social interactions. But Ghanim did not testify that he *never* left his apartment or socialized; rather, he testified that he often stayed home because he did not like to interact with people and that he relied heavily on one friend. This testimony is consistent with his prior self-reports, which reflect only limited socializing, often with a few friends who assisted with his chores.[10] The ALJ also found Ghanim not credible because he sometimes—but not always—requested an interpreter. Ghanim's periodic need for a translator does not impugn his credibility; as Ghanim testified, when he is particularly anxious or aggravated, understanding English becomes more difficult. This explanation is borne out by the record. His treating providers indicated that stress impacts his cognitive functioning and specifically noted that he reported difficulty speaking English when under stress.

---

[10] The dissent states that Ghanim testified that he "only went outside when accompanied by his friend." Dissent at 25. The record simply does not bear this out. Ghanim testified that his friend and caretaker Al-Haider came to visit often, that he relied heavily on Al-Haider's assistance, that he did not like to go out, and that Al-Haider would come by and take him outside. Nowhere does Ghanim testify that he never went outside without Al-Haider.

Finally, the ALJ discounted Ghanim's testimony because he received unemployment benefits after the alleged onset date of his disability. Continued receipt of unemployment benefits does cast doubt on a claim of disability, as it shows that an applicant holds himself out as capable of working. *See Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988). But here, Ghanim actually declined unemployment benefits within about a month of his onset date; rather than undercut his claim of disability, this prompt refusal of unemployment benefits supports it.

Next, the ALJ found Ghanim not credible based on his daily activities. Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination. *See Orn*, 495 F.3d at 639; *Batson*, 359 F.3d at 1196. But here, as described, the daily activities, which included completing basic chores, sometimes with the help of a friend, and attending occasional social events, do not contradict Ghanim's testimony. Daily activities may also be "grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" *Orn*, 495 F.3d at 639 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). However, there is no indication here that the limited activities Ghanim engaged in, often with the help of a friend, either comprised a "substantial" portion of Ghanim's day, or were "transferrable" to a work environment. *Id.*; *see also Smolen*, 80 F.3d at 1284 n.7 (recognizing that "many home activities may not be easily transferrable to a work environment").

Finally, the ALJ discredited Ghanim's testimony because other record evidence "casts additional doubt on the

reliability of [Ghanim's] self-report and on his motivation to alleviate symptoms." None of the other evidence identified by the ALJ can sustain an adverse credibility determination. It is unclear why a clinical assessment that Ghanim exhibits narcissistic traits would cast doubt on his credibility. Ghanim's pursuit of an unrelated discrimination suit is utterly irrelevant to his credibility. Even if Ghanim's expressed desire to receive disability benefits casts some doubt on the veracity of his testimony, *see Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992), standing alone, this scintilla of evidence cannot support an adverse credibility determination.[11]

### 3.   Lay evidence

"Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account." *Molina*, 674 F.3d at 1114. An ALJ may reject a lay witness's testimony only "upon giving a reason germane to that witness." *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007). Ghanim argues that the ALJ failed to give adequate consideration to a statement by Majid Al-Haider, his friend

---

[11] The dissent accuses us of being "blissfully oblivious" to the serious problem of fraudulent disability claims. *See* Dissent at 24–25. We are not. Undoubtedly, some claimants abuse the system. We simply do not endorse our colleague's apparent belief that those who report suffering from depression are "often" faking it. *Id.* Such a statement is neither appropriate nor useful to our task of reviewing individual claims based on an impairment the SSA has recognized as potentially disabling. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. Accordingly, we have analyzed Ghanim's claim on the facts of his case, rather than on the possibility that others may fake such conditions.

and caretaker. This issue is waived because Ghanim did not raise it in district court. *Greger*, 464 F.3d at 973.

### 4. *Ability to perform past relevant work*

An ALJ may use the testimony of a vocational expert to determine whether the claimant can perform past relevant work. 20 C.F.R. § 404.1566(e). An ALJ may rely on a vocational expert's testimony that is based on a hypothetical that "contain[s] all of the limitations that the ALJ found credible and supported by substantial evidence in the record." *Bayliss*, 427 F.3d at 1217. However, if an ALJ's hypothetical is based on a residual functional capacity assessment that does not include some of the claimant's limitations, the vocational expert's testimony "has no evidentiary value." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008). In determining a claimant's residual functional capacity, the ALJ must consider all of a claimant's medically determinable impairments, including those that are not severe. 20 C.F.R. § 404.1545(a)(2).

Here, the ALJ determined that Ghanim had a residual functional capacity to follow simple instructions in English, to carry out simple tasks, to work on a regular basis, and to respond appropriately to supervision and coworkers. However, this determination is flawed because, as explained, the ALJ improperly discounted medical evidence and Ghanim's testimony. Accordingly, the ALJ's reliance on the vocational expert's opinion that an individual with the aforementioned residual functional capacity could perform the work of a kitchen helper and a commercial cleaner was error. *Carmickle*, 533 F.3d 1166; *Bayliss*, 427 F.3d at 1217.

## IV. CONCLUSION

The ALJ's reasons for discounting the opinions of Ghanim's treating providers and discrediting Ghanim's testimony are not supported by substantial evidence. These errors infected the ALJ's residual functional capacity assessment and his determination that Ghanim was able to perform past relevant work as a kitchen helper and a commercial cleaner. We therefore reverse the district court's judgment affirming the ALJ's decision and remand with instructions to the district court to remand this case to the Commissioner for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**

Chief Judge KOZINSKI, dissenting:

Ghanim doesn't allege a physical disability—he claims to suffer from sleeplessness, recurring nightmares and depression. These aren't the kind of symptoms that are subject to clinical observations. We'd expect a treatment provider to rely heavily on self-reporting in evaluating such claims, and that's exactly what happened here.

The ALJ didn't put much stock in that self-reporting because he doubted Ghanim's credibility—and with good reason. Claims of depression are often made in fraudulent disability applications because they're easy to fake: Applicants can be taught "how to intentionally fail memory tests, how to dress . . . and how to present their demeanor." Pervaiz Shallwani & Damian Paletta, *Ex-Cops, Firefighters*

*Charged with Disability Fraud*, Wall St. J., Jan. 8, 2014, at A2. This is a serious—and costly—problem of which many appellate judges seem blissfully oblivious.

Ghanim's story was riddled with inconsistencies. At the hearing, Ghanim painted a picture of himself as a recluse who couldn't lead a normal life due to his mental illness. He said he was unable to cook for himself or do his own laundry and only went outside when accompanied by his friend.

But Ghanim's own written submissions show that he regularly went for walks—sometimes alone, made his own food and had no problems performing basic grooming. He had no difficulty interacting with other people, including his landlord, had many friends and attended church. A woman who knew Ghanim for ten years said he cooks, washes his own dishes, takes walks downtown and sometimes comes to her house to watch a movie or have lunch.

The doctor who performed Ghanim's diagnostic exam suspected he was malingering because he claimed to be unable to remember his date of birth, or the city he was in at the time of the exam. Ghanim says that his translator was poor. But he admits he understands English, previously interacted in English without a translator and worked briefly for the United States Army as an educator on Iraqi language and customs.

The ALJ's finding that the treatment providers' reports conflicted with treatment notes and the record as a whole was also backed by substantial evidence. The treatment notes present mixed evidence, some of which supports a finding that Ghanim is disabled, and some of which cuts the other way. For example, Ghanim self-reported on a number of

occasions that he was feeling better with medication, although at other times he reported no improvement. And other parts of the record, which show Ghanim engaged in a wide range of daily activities and social interaction, conflict with the treatment providers' assertion that he had a mental illness so debilitating he was unable to work.

The record might be read to support a finding that Ghanim was disabled, but "'where the evidence is susceptible to more than one rational interpretation,' we must uphold the Commissioner's decision." *Sandgathe* v. *Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quoting *Andrews* v. *Shalala*, 53 F.3d 1036, 1039–40 (9th Cir. 1995)). If my colleagues want to give Ghanim an undeserved victory, they have the votes to do it. But it's unfair of them to claim the ALJ's decision is not supported by the record when it clearly is.