NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MAR 22 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| LENA DRAWN,<br><br>     Plaintiff-Appellant,<br><br> v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner Social Security,<br><br>     Defendant-Appellee. | No. 16-55882<br><br>D.C. No.<br>2:15-cv-03787-BRO-KES<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
Beverly Reid O'Connell, District Judge, Presiding

Argued and Submitted March 7, 2018
Pasadena, California

Before: GRABER, W. FLETCHER, and OWENS, Circuit Judges.

Lena Drawn appeals from the district court's judgment affirming the

Commissioner of Social Security's denial of her application for supplemental

security income under Title XVI of the Social Security Act. We review the district

court's decision de novo, and the Commissioner's denial of benefits must be

supported by substantial evidence and a correct application of the law. *Valentine v.*

---

  * This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

*Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). As the parties are familiar with the facts, we do not recount them here. We reverse and remand.

## A. Medical Opinions

In disability benefits cases, "we distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citation and internal quotation marks omitted). A treating physician's opinion is generally entitled to more weight than that of an examining physician, which is entitled to more weight than that of a nonexamining physician. *Id*. "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an [administrative law judge ('ALJ')] may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id*. (citation omitted). "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be entitled to the greatest weight even if it does not meet the test for controlling weight." *Id*. (alteration, citation and internal quotation marks omitted).

Here, the ALJ rejected the opinions of treating psychiatrist Dr. Parsa and agency examining psychologists Drs. DiGiaro and Martin, which suggested that Drawn had greater mental limitations than the ALJ's residual functional capacity

determination. Because these opinions were contradicted by Dr. Garcia, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence for rejecting them. Moreover, as Dr. Garcia was an agency nonexamining psychiatrist, his opinion "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1996).

### 1. Treating Psychiatrist Dr. Parsa

Most of the reasons the ALJ provided for rejecting Dr. Parsa's opinion are not supported by substantial evidence.

Substantial evidence does not support the ALJ's reasoning that Drawn "was stable when she did not abuse substances." The treatment notes reflect that Drawn had maintained sobriety and yet was still experiencing symptoms.

Substantial evidence also does not support the ALJ's reasoning that the statement in the Ventura County Behavioral Health July 2011 assessment that Drawn "was capable of completing high school, and obtaining and maintaining a job" was "inconsistent with a finding of disabling impairment expressed in" Dr. Parsa's assessment in January 2014. The ALJ mischaracterized the statement in the July 2011 assessment and took it out of context. Further, the ALJ failed to recognize that several years had passed between the July 2011 assessment (when Drawn was 18 years old) and Dr. Parsa's assessment in January 2014, and Drawn

3

had still not managed to graduate high school or maintain a job.

These errors are not harmless because it is unclear that the ALJ would have rejected Dr. Parsa's opinion based solely on its remaining reason that Drawn "responded to medication." *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (discussing harmless error analysis). Thus, we remand so that the ALJ can reassess Dr. Parsa's opinion.

### 2.  Agency Examining Psychologist Dr. DiGiaro

The ALJ failed to provide specific and legitimate reasons that are supported by substantial evidence for rejecting the opinion of Dr. DiGiaro.

First, the ALJ reasoned that Drawn had "only recently beg[un] treatment 3 weeks earlier." But, the ALJ mischaracterized Dr. DiGiaro's report, which stated that Drawn, who had a "six-week-old son," "recently went back to treatment about three weeks ago." Moreover, it is unclear why Drawn's recent return to treatment undermines Dr. DiGiaro's assessment.

Second, substantial evidence also does not support the ALJ's rejecting Dr. DiGiaro's opinion for being "based primarily on subjective complaints." An ALJ may discount an opinion if it is "based to a large extent on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citation and internal quotation marks omitted). However, here, the ALJ offered no support for her

4

conclusion that Dr. DiGiaro's opinion was based primarily on Drawn's subjective complaints. Dr. DiGiaro's report indicates that she also reviewed Drawn's prior treatment records, and conducted her own observations and mental status examination. Moreover, as discussed below, the ALJ's finding that Drawn was not credible is unconvincing.

Therefore, the ALJ erred in rejecting Dr. DiGiaro's opinion.

### 3. Agency Examining Psychologist Dr. Martin

The ALJ also failed to provide specific and legitimate reasons that are supported by substantial evidence for rejecting the opinion of Dr. Martin.

First, the ALJ reasoned that Dr. Martin's assessment was inconsistent with Drawn's reported activities including her "efforts to obtain a high school diploma" and "living alone with a 22-month-old child." However, when Drawn testified before the ALJ in 2014, she was 21 years old and, despite continued attempts and specialized help, she had still not received her high school diploma. With respect to living alone with her young son, Drawn testified that she had him only half the week. Drawn explained that her son's paternal grandmother cared for him the other half of the week and when Drawn was overwhelmed or stressed out. Drawn also testified that she did not engage in activities outside of the house with her son. Thus, substantial evidence does not support the conclusion that Drawn's reported activities were inconsistent with Dr. Martin's assessment.

Second, contrary to the ALJ's assertion, Dr. Martin's conclusion that Drawn's "cognitive functioning [was] most likely somewhat higher than" suggested by her IQ score does not undermine Dr. Martin's assessment of Drawn's functional limitations, which were based on Drawn's emotional rather than intellectual capabilities.

Third, the ALJ rejected Dr. Martin's opinion because Drawn "alleged hearing voices and several complaints not mentioned in mental treating source progress notes." However, Drawn's hearing voices (such as a little boy named Timothy) is consistently documented in treatment notes. It is unclear what the ALJ meant by vaguely stating that Drawn alleged to Dr. Martin "several complaints not mentioned in mental treating source progress notes." Because the ALJ failed to specify the conflicting evidence, it does not satisfy the substantial evidence standard. *See Garrison*, 759 F.3d at 1012.

Therefore, the ALJ erred in rejecting Dr. Martin's opinion.

**B. Adverse Credibility Finding**

The ALJ failed to provide "specific, clear and convincing reasons" for rejecting Drawn's testimony about the severity of her symptoms. *Ghanim*, 763 F.3d at 1163 (citation omitted) (discussing two-step process for evaluating a claimant's testimony). The ALJ gave four reasons for discounting Drawn's credibility: (1) her daily activities; (2) her noncompliance with medical advice;

6

(3) her treating doctors' prescription of limited and conservative treatment; and (4) her inconsistent statements regarding marijuana use. Most of these reasons are not convincing.

First, the ALJ rejected Drawn's testimony because her alleged mental health limitations were belied by her daily activities including (a) attending an independent studies program in an effort to obtain her high school diploma; (b) taking care of her 22-month-old toddler, at least half of the time; and (c) taking care of daily functioning. However, Drawn's daily activities, as she described them, are consistent with her testimony about her mental impairments. *See id.* at 1165; *Garrison*, 759 F.3d at 1016. Although Drawn had been trying to obtain her high school diploma, she still had not done so, despite continued attempts over several years and specialized help. As mentioned, Drawn cared for her toddler only half the week, and she did not leave the house with him alone.

Second, the ALJ rejected Drawn's testimony based on her purported "noncompliance with medical advice." Specifically, the ALJ noted that Drawn "did not always take psychiatric medication as prescribed, as she allowed herself to run out of medication or did not take it because she was pregnant." While an ALJ may rely on noncompliance with medical advice, this reason for discounting Drawn's credibility is unconvincing. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Drawn's doctors instructed her to stop taking her psychiatric

7

medication while pregnant, so by "not tak[ing] it because she was pregnant" Drawn was actually complying with medical advice. The ALJ's comment that Drawn "allowed herself to run out of medication" appears to be a reference to one occasion when Drawn told her treating doctor that she "couldn't get" her Abilify medication for "4 days after it was prescribed" and was crying during that delay. This single medical record fails to support that Drawn did not take her psychiatric medication as prescribed because her treating doctor otherwise consistently noted that Drawn had "Full" or "Good" compliance with medications. Moreover, when the ALJ told Drawn that the record suggested that she was not compliant with taking her medication, Drawn disagreed and said that she took her medication every day. The ALJ did not question Drawn further, or give her an opportunity to explain her inability to get Abilify for four days.

Third, the ALJ reasoned that "[o]verall, treating physicians have responded with limited and conservative treatment" which was "inconsistent with, and would not be expected from treating physicians if they found the level of severity of symptoms as alleged by" Drawn. However, the ALJ improperly characterized Drawn's treatment as "limited and conservative" given that she was prescribed a number of psychiatric medications. *Cf. Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (holding that the ALJ did not err in discounting the claimant's testimony regarding the severity of his symptoms because his physical ailments were treated

8

with the "conservative treatment" of an over-the-counter pain medication (citation omitted)).

These errors are not harmless because it is unclear that the ALJ would have rejected Drawn's testimony based solely on its remaining reason that Drawn made inconsistent statements regarding marijuana use. *See Marsh*, 792 F.3d at 1173. Thus, we remand so that the ALJ can reassess Drawn's testimony.

Accordingly, we reverse and remand to the district court with instructions to remand to the Social Security Administration for further proceedings. On remand, the ALJ should reassess the medical opinions and Drawn's testimony. Because of this remand, we do not reach Drawn's remaining arguments on appeal, including her argument that the ALJ erred at step five of the sequential evaluation process by relying on the Medical-Vocational Guidelines rather than the testimony of a vocational expert. Remand for further proceedings, rather than an award of benefits, is appropriate because "essential factual issues" must be resolved. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

**REVERSED AND REMANDED**.