NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MAR 17 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

OLGA LEZA,

Plaintiff-Appellant,

v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

Defendant-Appellee.

No.   21-16079

D.C. No. 2:20-cv-01066-JAT

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Arizona
James A. Teilborg, District Judge, Presiding

Argued and Submitted March 8, 2022
Phoenix, Arizona

Before:  PAEZ, CLIFTON, and WATFORD, Circuit Judges.

Plaintiff-Appellant Olga Leza ("Leza") appeals the district court's order

affirming an Administrative Law Judge's ("ALJ") denial of Social Security

disability benefits.  We have jurisdiction under 28 U.S.C. § 1291, and we reverse

and remand.

Leza suffers from chronic hypertension that is resistant to medication.  In

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

denying Leza's claim for disability and disability insurance benefits, the ALJ assigned "little weight" to the medical opinions of Leza's treating physicians and nurse practitioner, instead assigning greater weight to the opinions of two non-examining physicians who reviewed Leza's medical records. The ALJ also rejected Leza's testimony regarding her symptoms based on perceived inconsistencies in Leza's medical records. The district court affirmed.

We review a district court's decision to affirm the ALJ's denial of benefits de novo. *Diedrich v. Berryhill*, 874 F.3d 634, 638 (9th Cir. 2017). We uphold an ALJ's disability determination "unless it contains legal error or is not supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citation omitted). Here, although the ALJ gave three reasons for assigning "little weight" to the opinions of Leza's treating physicians, none of these reasons was supported by substantial evidence.

First, the ALJ said that the treating physicians' opinions "contrast[ed] sharply with their course of treatment." One of Leza's treating physicians, Dr. Salvatore Gillette, opined that Leza could not return to work because she continued to suffer from "intermittent chest pain syndrome," "progressive fatigue,"

2

headaches, and palpitations caused by "progressive uncontrolled hypertension," and that "even minimal stress" could "put her life at risk." The ALJ did not explain how this opinion conflicted with Dr. Gillette's course of treatment, which involved repeated attempts to control Leza's hypertension through different doses and combinations of antihypertensive medications. Another treating physician, Dr. J.M. Morgan, opined that Leza suffered from "[v]ery difficult to control hypertension [and] some symptoms from the meds." Again, the ALJ did not explain how this assessment conflicted with Dr. Morgan's course of treatment, which involved at least four medication adjustments to address Leza's hypertension.

Second, the ALJ said that the treating physicians' recommended restrictions "[were] not related to the objective findings in their examinations," which "show[ed] normal findings . . . with no restrictions to movement." Although Leza's medical records show "normal" findings in certain areas such as her cardiovascular and musculoskeletal health, the ALJ failed to interpret these "normal" findings "in [the] context of the overall diagnostic picture" drawn by her medical providers. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citation omitted). Despite the "normal" findings identified by the ALJ, Leza's examination records also contain evidence regarding persistent symptoms attributed to her hypertension, including chest pain, fatigue, palpitations,

3

headaches, and jaw and neck pain. The ALJ did not explain how Leza's "normal" findings are inconsistent with these symptoms, and he did not consider the possibility that Leza's reported symptoms could still occur despite normal functioning in other aspects of her health. Similarly, the ALJ did not explain how a "normal" finding at one point in time speaks to Leza's ability to maintain employment over time, where regular attendance is expected.

Third, the ALJ said that the opinions of Leza's treating physicians were "quite conclusory, providing very little explanation of the evidence relied on." Although Leza's treating physicians submitted their functional capacity assessments on a short check-box form, "there is no authority that a 'check-the-box' form is any less reliable than any other type of form." *Trevizo*, 871 F.3d at 677 n.4. Here, moreover, the ALJ "failed to recognize that the opinions expressed in check-box form . . . were based on [each physician's] significant experience with [Leza] and supported by numerous records, and were therefore entitled to weight that an otherwise unsupported and unexplained check-box form would not merit." *Garrison*, 759 F.3d at 1013.

The ALJ committed two additional errors in discounting the opinions of Leza's treating providers. First, he assigned "little weight" to the opinion of Dr. Gillette in part because Dr. Gillette opined on the ultimate question of whether Leza was disabled and capable of returning to work. But "[i]n disability benefits

4

cases such as this, physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability—the claimant's ability to perform work." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). That a physician has opined on the ultimate issue of disability is not a legitimate reason for discounting his or her opinion. *See id.* Second, the ALJ assigned "little weight" to the opinion of the nurse practitioner who treated Leza. Although the opinion of a nurse practitioner does not command the same deference as a physician's opinion, an ALJ may give less deference to such an opinion "only if [he] gives reasons germane to each witness for doing so." *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017).[1] But the only reason the ALJ gave for discounting the nurse practitioner's opinion was that she, like Dr. Gillette, opined on the ultimate question of Leza's disability.

The ALJ also denied Leza's benefits claim because he found her symptom testimony inconsistent with her medical records. Because the ALJ made no finding, "based on affirmative [record] evidence," that Leza was feigning her illness, *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006), he was

---

[1] Because Leza's disability application was filed before March 27, 2017, the rule that now categorizes nurse practitioners as "[a]cceptable medical source[s]" alongside licensed physicians, *see* 20 C.F.R. § 404.1502(a)(7), does not apply to this case. For purposes of this case, rather, Leza's nurse practitioner falls under the category of "other sources" that require consideration but are not entitled to the same deference as "acceptable medical sources." *See Revels*, 874 F.3d at 655.

permitted to reject Leza's symptom testimony only by giving "specific, clear and convincing reasons for doing so," *Garrison*, 759 F.3d at 1015 (citation omitted). The reasons given by the ALJ did not meet this standard.

First, the ALJ said that "the elevations in the claimant's blood pressure are episodic and able to be resolved, sometimes even without treatment." Although there is a single notation indicating that "[t]he course/duration of [Leza's] symptoms is episodic," there are numerous other records indicating that over the span of a year, Leza's blood pressure readings consistently showed Stage 1 or Stage 2 hypertension. Insofar as the ALJ invoked Leza's "normal" findings, he never explained why these findings are necessarily inconsistent with the symptoms attributed to her severe hypertension.

Second, the ALJ's recitation of Leza's daily activities, does not, without more, constitute a clear and convincing reason to reject her symptom testimony. *See Garrison*, 759 F.3d at 1016. Here, the ALJ "did not develop a record regarding the extent to which and the frequency with which" Leza performed her daily activities, *Trevizo*, 871 F.3d at 676, nor did he find that her "physical activities . . . consume[d] a *substantial part* of [her] day," *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (emphasis in original).

Third, the fact that Leza is described throughout her medical records as "well nourished, well developed, cooperative, alert, oriented, awake, pleasant, nice,

6

comfortable, and in no acute distress," is also not a clear and convincing reason to question her symptom testimony. *See Ghanim*, 763 F.3d at 1164.

Finally, under our "credit-as-true" rule, we may reverse and remand to the ALJ with instructions to calculate and award benefits if the following three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020.

We conclude that each condition is satisfied here. First, there is no need to develop the record, and giving the ALJ an opportunity "to revisit the medical opinions and testimony that []he rejected for legally insufficient reasons" does not constitute a "useful purpose" under part one of the test. *Id.* at 1021. Second, as already discussed, the ALJ rejected the opinions of Leza's treating physicians without giving legitimate reasons supported by substantial evidence, and rejected her symptom testimony without giving clear and convincing reasons. Third, if the opinions of Leza's treating providers and her own symptom testimony were credited as true, the ALJ would be required to find Leza disabled on remand. This conclusion "follows directly from our analysis of the ALJ's errors and the strength

7

of the improperly discredited evidence, which we credit as true." *Id.* at 1022. In this case, two treating physicians and a nurse practitioner all concluded that Leza was disabled based on symptoms from her hypertension, her intolerance to multiple medications, and the risk that additional stress and exertion could pose for her health. This conclusion is consistent with Leza's own testimony regarding the severity of her symptoms, which included headaches, chest pain, fatigue, and shortness of breath, and her physical limitations, which included needing to lie down and rest for extended periods of time. Finally, an impartial vocational expert testified that an individual with the impairments described by Leza could not work. This evidence is sufficient to satisfy the third part of the credit-as-true rule. *See id.*

For the reasons stated above, we reverse the district court's order affirming the denial of benefits, and instead remand to the district court with instructions to remand to the ALJ for a calculation and award of appropriate benefits.

**REVERSED and REMANDED**