**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MAY 25 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JACK M. BOGGS, | No. 21-35526 |
| Plaintiff-Appellant, | D.C. No. 3:20-cv-05764-MLP |
| v. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | MEMORANDUM* |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Western District of Washington
Michelle L. Peterson, Magistrate Judge, Presiding

Argued and Submitted May 9, 2022
Portland, Oregon

Before: BERZON, TALLMAN, and CHRISTEN, Circuit Judges.

Jack Boggs appeals the district court's affirmance of the Commissioner of

Social Security's denial of his application for supplemental security income. We

review the district court's decision de novo and will set aside the agency's denial

of benefits only if the decision was not supported by substantial evidence. *Buck v.*

*Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017). We reverse and remand.

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

1.  The Administrative Law Judge ("ALJ") erred by rejecting Boggs's testimony about his symptoms.  Once an ALJ has determined that a claimant's underlying impairments "could reasonably be expected to produce the pain or other symptoms alleged," the ALJ "can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so," as long as there is no affirmative evidence of malingering.  *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014) (first quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007); and then quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

(a)  The ALJ asserted that one of Boggs's physicians "noted significant malingering behavior," citing Boggs's display of so-called "Waddell signs," such as "grimacing, rubbing, verbalizing and sighing."  The ALJ inferred that the physician's observation of Waddell signs was equivalent to evidence of malingering.  Boggs's physicians never so stated.  The ALJ provided no discussion of how Waddell signs are interpreted, or under what circumstances they might demonstrate malingering.  The ALJ is "not qualified as a medical expert," *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975), and provided no reasons or citation to record evidence for the conclusion that the presence of some Waddell

signs indicated that Boggs was malingering.[1]  The ALJ's suggestion that the record contains evidence of malingering is therefore not supported by substantial evidence.

(b)  The ALJ did not provide specific, clear and convincing reasons for rejecting Boggs's testimony.  The ALJ stated that Boggs's testimony was inconsistent with his "essentially routine and conservative" course of treatment with pain medication.

Boggs's course of treatment, which has for years included a steady regimen of powerful opioid painkillers such as Ultram and hydrocodone, does not resemble the "over-the-counter pain medication" we have previously characterized as "conservative treatment" sufficient to discount a claimant's testimony regarding the severity of an impairment.  *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)).  Although painkillers have managed Boggs's symptoms as long as he remains sedentary, his medical providers have consistently observed that his symptoms are "*aggravated by daily activities*," including "bending, changing positions, . . . sitting, standing and walking."  (emphasis added).  Moreover, at least by 2017 and 2018, Boggs

---

[1] According to medical sources, the presence of Waddell "signs by themselves should not be equated with malingering."  David A. Scalzitti, *Screening for Psychological Factors in Patients with Low Back Problems:  Waddell's Nonorganic Signs*, 77 Physical Therapy 306, 311 (1997); *see also* Gordon Waddell et al., *Nonorganic Physical Signs in Low-Back Pain*, 5 Spine 117, 123–25 (1980).

was regularly showing severe pain and limitations in range of motion and reporting average weekly pain around seven, eight, or nine out of ten, despite his use of pain medication. The assertion that Boggs's treatment was "essentially routine and conservative" is therefore not supported by substantial evidence.

The ALJ also incorrectly asserted that Boggs's testimony was "not entirely consistent with the medical evidence and other evidence in the record," including lumbar spine imaging showing only mild-to-moderate degenerative changes and no nerve root impingement. "[S]ubjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)). Moreover, the ALJ did not consider that Dr. Davenport's 2019 physical examination showed that Boggs had a severely reduced range of motion and that such "evidence of reduced joint motion" is itself "[o]bjective medical evidence . . . obtained from the application of medically acceptable clinical" techniques. 20 C.F.R. § 416.929(c)(2). In light of those objective findings and Boggs's worsening pain after 2016, the ALJ erred by rejecting Boggs's testimony as inconsistent with the medical evidence.

2. The ALJ did not give germane reasons for rejecting the lay witness report of Boggs's partner, Holly Meyer. *See Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017). The ALJ gave "slight, if any, weight" to Meyer's opinion because "her

4

allegations are not consistent with the medical evidence of record, which shows his symptoms were managed conservatively with medication." As discussed, however, Boggs's treatment with prescription opioids was not conservative, and as Meyer's report states, his symptoms were managed only as long as he refrained from most daily activities.

3. Last, the ALJ erred by giving greater weight to the September 2016 opinion of non-examining medical consultant Dr. Irwin than to the 2019 examining expert opinion of Dr. Davenport. If an "examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). Generally, "the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014).

The ALJ gave "little weight" to Dr. Davenport's opinion relating to Boggs's back conditions on the grounds that his opinion was "not consistent with the longitudinal record," that his opinion was "not supported by the objective medical evidence," and that Dr. Davenport was "only able to examine the claimant once in a very short evaluation." These reasons do not support giving more weight to Dr. Irwin's opinion than to Dr. Davenport's.

5

First, as already discussed, Dr. Davenport's 2019 opinion is consistent with the longitudinal record, which showed that Boggs's back pain and limited range of motion grew more severe after 2016. Second, contrary to the ALJ's statement, Dr. Davenport supported his opinion with objective medical evidence by measuring Boggs's severely reduced range of motion in his neck, back, shoulders, and hips. Those measurements are objective medical evidence. *See* 20 C.F.R. § 416.929(c)(2). Third, nothing in the record supports the ALJ's statement that Dr. Davenport conducted only "a very short evaluation" of Boggs. To the contrary, Dr. Davenport's description of his physical examination is quite detailed. And even if Dr. Davenport's conclusions "were based on 'limited observation'" of Boggs, the length of an examining physician's evaluation "is not a reason to give preference to the opinion of a doctor who has *never* examined the claimant," especially as Dr. Davenport's opinion was supported by a review of Boggs's post-2016 medical records, which were unavailable to Dr. Irwin. *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995).[2]

We reverse and remand to the district court with instructions to remand to the agency for further proceedings. On remand, the ALJ must reconsider Boggs's testimony, Meyer's lay witness statement, and the medical opinions of Dr.

_____

[2] On review of the record, we conclude that the ALJ did not err in weighing the other medical opinions concerning Boggs's vocational limitations.

Davenport and Dr. Irwin consistent with this disposition and must reevaluate Boggs's residual functional capacity and ability to work accordingly.

**REVERSED AND REMANDED.**